EVANS & RAGLAND, plaintiffs in error, *vs.* THE ATLANTA AND WEST POINT RAILROAD COMPANY, defendant in error.

1. The sayings of the agents of a railroad company are admissible and will bind the company, only when made in the particular business entrusted to them, and while engaged in that business.

2. Hence, to authorize the introduction as evidence of the written indorsement of the agents of a railroad company, upon a bill of lading referred from one agent to another, in respect to the condition of corn when received by the company sought to be charged with damage thereto, it must be shown that it is the business of such agents, entrusted to them by the company, to investigate the condition of the freight, and to indorse the result of their investigations upon such bill of lading.

3. For this purpose the agents of connecting roads may be the agents of the the road sued, but the fact that the road sued is one of the connecting line, and under contract with the others in respect to the carriage of freight, must appear in order to make the agents of other companies its agents to do for the company last receiving the freight, and sued for the damages, what such agents are authorized to do for the other companies.

4. To bind "the last company which has received the goods as in good order," under section 2084 of the Code, there must be some proof that it so received them; and the written indorsement of the agent on the bill of lading, made some time after their reception, is not evidence unless accompanied with proof that it was his business so to act on reference of the matter to him.

5. Nor is a bill of lading, executed at St. Louis, Missouri, for corn "received in apparent good order on board good steamboat Emma C. Elliott, to be conveyed from St. Louis to Memphis, and from thence by the Memphis and Charleston railroad, with connecting railroads, to be delivered in like good order at the company's depot at LaGrange, Georgia," and signed by their agent, evidence to show the reception of the corn in good order by the defendant, unless it be proved that the defendant was one of the connecting roads under contract with the other and with the steamer, and thus bound by the act of the steamer's agent at St. Louis.

6. Upon proof that goods "in good order," or "in apparent good order," or "as in good order," are received on any railroad of a line in connection with which "the last company" runs its road, the presumption will arise that such condition of the goods continued up to the time when the last

Evans & Ragland *vs.* The Atlanta, etc., Railroad Company.

company received them, and the last company will be responsible to the consignee, unless it shows that the goods were not received by it in such good order, or apparent good order, but there must be some legal evidence to show either that the last company received the goods as in good order, or that some other railroad company connecting with it, so received them, and in the absence of any legal evidence of either fact, a non-suit was properly awarded—especially as in this case there was no proof that defendant received the corn from any other carrier, or how it was received, after the indorsement upon the bill of lading by the agent was rejected as evidence.

Principal and agent. Railroads. Evidence. Bill of lading. Before Judge HOPKINS. Fulton Superior Court. October Term, 1875.

Reported in the opinion.

JACKSON & LUMPKIN; THOMAS H. WHITAKER, for plaintiffs in error.

A. M. HAMMOND & SON, for defendant.

JACKSON, Judge.

This suit was brought for the recovery of damages to certain corn delivered at Saint Louis, Missouri, to a steamer, in apparent good order, to be conveyed by the steamboat to Memphis, and thence by the Memphis and Charleston Railroad, and other connecting roads, to LaGrange, Georgia. The corn was delivered to the plaintiffs, who were the consignees, at LaGrange, but was badly damaged. Suit was brought against the defendant, on the allegation that defendant was the last company which received the corn in good order, and was consequently responsible for the damage.

1, 2, 3. The bill of lading, with the indorsement of the freight agent of the defendant at Atlanta thereon, to the effect that the defendant received the corn from the Western and Atlantic Railroad in good order, was tendered in evidence and rejected, and the first question presented for review here is, was this indorsement by the agent, made some days after the corn passed through Atlanta, legal evidence to show that the

defendant received the corn as in good order, so as to charge it
with the damages as the last company which received it? If
it was the duty of this agent to investigate how the freight
was received, whether in good or bad order, and to report
that fact on the bill of lading on inquiry by the agent at
LaGrange, then we think this indorsement would be made
"*dum fervet opus*"—in the very work entrusted to him by
the company—and being so made in the business he was em-
ployed to transact, his sayings or writings, which are but
written statements, would be admissible; but in the absence
of proof that this was in the line of his business—that it was
his duty to investigate and report thereon—the written state-
ment on the bill of lading would be but the sayings of the
agent in respect to a past transaction, and would not be ad-
missible.   In this case, the record does not disclose any proof
that such investigation and report and indorsement was part
of the business of this agent, and therefore the indorsement
was properly rejected.   In other states, there is some conflict
in the authorities upon the subject, and also in the English
Reports: 8 N. Y., 501, 509; 6 Gray, 450; 28 Eng. Com.
Law, 275; 10 Eng. Law—all go to show that the sayings of
the agents as to past transactions are admissible; but in
Georgia, the question is not an open one.   Section 2208 of
our Code, and many decisions of this court, settle it beyond
controversy: 6 *Georgia Reports*, 365; 19 *Ibid.*, 416; 29
*Ibid.*, 399, 461; 34 *Ibid.*, 330; 26 *Ibid.*, 111, and others.
These Georgia cases and our Code confine the admissibility of
the sayings of the agent to the business entrusted to him, and
*to the time while so employed,* and exclude his sayings as to
past transactions.   In our state, they are admissible only upon
the principle of being part of the "*res gestœ.*"   It is clear,
therefore, that the court rejected the indorsement of this agent
and of the other agents, properly, because they spoke or wrote
about past transactions, and there was no proof that it was
their business to investigate these transactions and write or
make statements about them.

4. The indorsement upon the bill of lading made by the

Evans & Ragland *vs.* The Atlanta, etc., Railroad Company.

agents of this company, and other companies connecting therewith, being properly rejected as evidence, no case is left for the plaintiffs except such as is made by the bill of lading, stripped of the indorsements, and the reception of the damaged corn at LaGrange.   Its reception at LaGrange in a damaged condition, is certainly no proof that the defendant received the corn as in good order at Atlanta.   True, there are authorities to this effect, but we cannot concur in the principle ruled or in the reasoning which led to it: See note to Angell on Carriers, 4th edition, section 202, and cases cited.   No presumption, we think, can arise that it was received in good order at Atlanta, from the fact that it reached LaGrange badly damaged ; if any presumption arose, it would seem the contrary, especially where, as in this case, the damage is hid from sight.

5. The whole case, then, is narrowed to this point: does the receipt that the corn was in apparent good order, given by an agent of a steamboat at St. Louis, to be carried by water to Memphis and thence by rail to LaGrange, furnish any evidence, actual or presumptive, that the defendant received the corn in good order, or in apparent good order, or as in good order, at Atlanta, Georgia?   There is no evidence that the defendant was connected with the steamboat; that it was engaged by any contract with it or other roads and it, so as to make the agent at St. Louis who receipted the bill of lading for the steamer, in any sense the agent of defendant so as to bind the defendant.   Our statute, section 2084 of the Code, makes the last company of *connecting railroads* liable; it is silent in respect to any connection with steamboats.   And it appears to us that there is reason in this silence.   Railroads are stationary, always to be found in the same place; steamboats may be in one water one year, and another year a thousand miles off.   Whilst, therefore, it is just to the consignee, and not unjust to the railroad carrier, to make the last company responsible to the consignee, and force that company to go upon its connecting lines for indemnity, to put the *onus* upon such company to saddle the damage on the connecting road which caused it, it would be hardly just to apply the

rule to a steamboat. The connecting road is immovable, it can always be found and sued; the boat is movable, variable, changeable in location, and not so easily found or sued; but we will not rule on this point.

6. Excluding the indorsements upon the bill of lading, there is no evidence that any of the connecting railroads received this corn in good order, or as in good order. If that fact had been proven, then the presumption would have arisen that the corn remained in that condition of good order from connecting road to connecting road until it reached defendant, and hence that it was received by defendant as in the good order in which it left the other roads; and such presumptive proof would have been sufficient to carry the case to the jury, and unless rebutted, to have authorized a recovery from the defendant. Such seem to be the authorities; and principle and practical good sense, and the convenience of the public, sustain them, we think. See 43 Barb., 225; 45 N. Y., 518; 28 Wis., 204. But this case, we think, breaks down from the fact that there is no positive proof that the defendant received this corn in good order, or as in good order, and no presumptive proof thereof by proof that *any road* with which it connected so received the corn, *nor any proof that it received the corn from any other carrier.* We must, therefore, after much deliberation and some hesitation, sustain the nonsuit and affirm the judgment, there being no legal evidence to show how, or from whom, or in what condition, this defendant received the corn alleged to have been damaged, after the indorsements upon the bill of lading were ruled out or rejected as evidence.

Judgment affirmed.