same terms as are provided in the original contract; the manner of doing the work to be under the direction of the said engineer—the amount of work to be estimated monthly by the engineer, and upon his estimate Green & Co. promised to pay monthly that amount, less 20 per cent:

1. *Held,* that Jackson & Co. were bound by the terms and stipulations of the original contract between Green & Co. and the city of Augusta, and by the decision and award of the engineer *prima facie.*

2. That the award of the engineer was binding on the parties except for fraud, and before Jackson & Co. could annul the same on that account, the city of Augusta and Green & Co. should be parties, and the evidence should show that Green & Co. were connected with such fraud.

3. A declaration in attachment founded on the award of the engineer, cannot be amended by alleging that said award is fraudulent, and seeking to set the same aside, the same being a distinct cause of action *ex delicto.*

4. When during the progress of the work Jackson & Co. were acquainted with the facts which they allege constituted the fraud, and had the right under the contract to give up the work, but did not exercise it, and continued to do the work and receive the pay on the estimates of the engineer, according to agreement, each month, this is proof of acquiescence in the correctness of the award.

HAWKINS, Justice.

---

## THE CENTRAL RAILROAD *vs.* ROGERS & SONS.

(JACKSON, Chief Justice, being disqualified, having been of counsel, Hon. George Hill-yer, Judge of the Atlanta circuit, was designated by the governor to preside in his place.)

Where two disinterested persons, on the oral request of both the owner and the railroad company, made a survey of damaged freight and reported on the same, but the effort thus made did not result in adjusting the dispute, and a suit was afterwards brought to recover the damages, the report or finding of such disinterested persons was not admissible in evidence, at the instance of either party, over the objection of the other, even though made in writing, and even though it had long been the custom of the railroad company, and its custom at that place, to adjust such disputes it that manner.

2. Where a railroad company received goods and carried them over its line from a connecting road, such goods are presumed to be re-

v 66—16

ceived "as in good order," within the meaning of section 2084 of the revised Code, if nothing appears to the contrary.

3. The principle of liability fixed by section 2084 applies whether the goods pass over all the lines on the same car, or at any terminal point are transferred or loaded from the car of one line on to that of another, and it makes no difference whether the goods go all the way on the same bill of lading or how often new ones are substituted on the way.

4. In this case the evidence was conflicting as to whether the goods were damaged in the hands of the consignor before shipment on the initial line, and that question having been fairly submitted to and passed upon by the jury, and the judge who tried the case being satisfied with the verdict, this court will not interfere.

5. There was no error in allowing the amendment correcting the mistake in the name of the defendant corporation, especially after it had appeared and pleaded.

HILLYER, Judge.

---

## THE SOUTHWESTERN RAILROAD *vs.* SINGLETON.

1. A railroad company in this state providing sufficient trains and cars to accommodate all the traveling public over its line, has the legal right to run special trains over its road for the purpose of carrying provisions and paying its employés, and to prohibit any person from traveling on such trains, and if plaintiff entered a car attached to the same, knowing its character, without the consent of the corporation or its agent, he becomes a trespasser.

2. If injury is sustained by such person whilst so wrongfully upon such special train, the fact of being on such train will be an element in determining his prudence and want of care, and the liability of the corporation.

3. If one enters a pay-train for the purpose of riding thereon, and by the rules and regulations of the company passengers were not allowed to ride on such trains, it would be his duty to leave the train as soon as he prudently could, when notified of such rule.

4. If one leaps from a train of cars moving at the rate of fifteen miles per hour, on the advice or concurrence of the conductor, his right to recover would involve the question whether he prudently used the only means provided by the company for him to get off that the course of the company permitted him to use, and also his recklessness and want of ordinary care ; for if by the use of ordinary care