The Western and Atlantic Railroad Company *vs.* The Exposition Cotton Mills.

1. Where machinery was shipped on a through bill of lading from Boston to Atlanta, and according to one of the stipulations therein,

the machinery was to be delivered to the Exposition Cotton Mills in Atlanta by the railroad receiving it, and the agents of such railroad mentioned in the bill of lading, one of which was the Western and Atlantic Railroad Company, made out its freight bill at Atlanta against said mills, and the freight charges were paid it by said mills, the fact that the cars containing the machinery were transported to the mills, from Atlanta, by the Georgia Pacific Railway Company, two miles and a quarter, would not make the latter, under a proper interpretation of the contract, the last road receiving the machinery.

(*a*) Besides, it appears that the Georgia Pacific Railway Company received nothing for carrying these cars from the depot to the mills, but that the Western and Atlantic Railroad Company received the whole freight charges.

2. The declaration being against defendant as one of the connecting railroads of a continuous line, and alleging that it received certain machinery from another one of said railroads at Dalton, Georgia, and that it was negligently transported by defendant in open cars, so that it was exposed to rain and greatly injured; but there being no allegation that the goods were received by defendant as in "good order," the liability of the defendant under such declaration must be determined under the rules of the common law, and not under section 2084 of the code of Georgia.

(*a*) Where a railroad company is sued for damage to goods in transit, and the section of the code cited is relied on for recovery, the defendant should be put on notice thereof. The proof to be made and the liability of the railroad are entirely different in the two actions. Under the code, the last road receiving the freight as in good order cannot relieve itself of liability by showing that the goods were damaged on other roads, while, if sued on its common law liability, it can relieve itself by showing that they were damaged on a connecting line before it received them. The presumption is against it, but it can rebut that presumption by proof.

(*b*) So, under the action of common law, the defendant would be entitled to all the benefits and exceptions reserved in the contract made between the shipper and the first carrier who received the goods, where the contract is a through contract.

3. The contract in the bill of lading limited the liability of the carrier, providing that it should not be held liable for "any loss or damage arising from . . . fire from any cause, on land or water, . . . freshets, floods, weather, . . . explosions, . . . insufficiency of package in strength or otherwise, rust, dampness," etc. While such a contract would not be good in Georgia, it seems that, under the laws of Massachusetts, it is a good contract in that State. It having been made in the latter State, and being intended to be partly performed there and in several

other States, as well as in Georgia, the defendant can avail itself of it in this action.

(a) Although the goods were shipped at the owner's risk and the carriers were not to be liable for damage caused by the weather or rust, still if the damage was caused by weather or rust by the negligence of the carrier, or because of unreasonable delay upon the road, the carrier guilty of the negligence would be liable.

(b) If the shipper agreed that the machinery might be transported upon open cars, the carrier would not be liable for damages caused by its being so transported; but if ordinary diligence required the carrier to cover the cars during a detention on the road, and it failed to do so, it would be liable for damages resulting from such failure.

November 5, 1888.

Railroads. Connecting roads. Delivery. Pleadings. Contracts. Before Judge VAN EPPS. City court of Atlanta. December term, 1887.

Reported in the decision.

JULIUS L. BROWN, for plaintiff in error. .

ABBOTT & SMITH, *contra.*

SIMMONS, Justice.

The Exposition Cotton Mills, of Atlanta, Ga., sued the Western & Atlantic Railroad Company for damages upon the following state of facts: The plaintiff purchased from Riley & Co. certain cotton mill machinery, and made a contract with the Virginia, Tennessee and Georgia Air Line, to ship the machinery from Boston and other places in the east to Atlanta, at a reduced rate of freight and at the "owner's risk." The different roads over which it was to be shipped were mentioned in the bill of lading, commencing with the New York and New England Railroad Co. and ending with the Western and Atlantic Railroad Company, the latter having its terminus in the city of Atlanta. A por-

tion of this machinery was shipped from Boston some time in September, and arrived in Atlanta some time in October, being over thirty days on the route. When this portion of the machinery arrived in Atlanta and was delivered to the Exposition Cotton Mills, it was found to be badly damaged by rust. The delivery at the mills was made by the Georgia Pacific Railroad Company, to which the Western and Atlantic Railroad Company had delivered the cars containing the machinery, at its depot in Atlanta, on the morning of the 20th of October, 1882, and it carried the cars thence to the mills, two miles and a quarter from the depot. The bill of freight for the machinery was made out against the Exposition Cotton Mills by the Western and Atlantic Railroad Company, and the freight charges paid to it by the Exposition Cotton Mills. The evidence further shows that when this particular lot of machinery was about to be shipped, application was made to the railroad company by Leigh & Co., shipping agents of Riley & Co., for cars in which to transport it; and Leigh & Co. were informed by the agent of the railroad company that he could only furnish flat-cars. These flat-cars were accepted by the shippers, and the machinery was loaded thereon and started south towards Atlanta. In one of the contracts for the shipment of the machinery, it was stipulated that the machinery, after it was first loaded, should not be changed to other cars, but should go through on the same cars to its destination. It was stipulated in the bill of lading, that the railroad company should not be held liable for "any loss or damage arising from the following causes, viz., fire from any cause, on land or water, . . freshets, floods, weather, . . . explosions, accidents to boilers and machinery, . . . insufficiency of package in strength or otherwise, rust, dampness," etc.

On the trial of the case, the jury returned a verdict for the plaintiff. The defendant made a motion for a new trial, which was overruled by the court, and it excepted. The view we take of this case renders it unnecessary for us to discuss all of the forty-seven grounds of this motion. There are certain legal principles which control the case, and when they are discussed and decided, they will sufficiently determine the liability of the railroad company under this form of action.

1. It was contended by counsel for the plaintiff in error that the Western & Atlantic Railroad Company was not the last road receiving the machinery, and therefore was not liable, because it delivered the cars containing the machinery to the Georgia Pacific Railroad Company. The court below, however, instructed the jury that under the contracts of shipment, the Western & Atlantic Railroad Company was the last road. We do not see any error in this charge. This was a through bill of lading from Boston to Atlanta, and according to one of the stipulations therein, the machinery was to be delivered to the Exposition Cotton Mills in Atlanta by it and its agents, the railroads mentioned therein. The Western & Atlantic Railroad Company was one of the roads mentioned, and made out its freight bill against the Exposition Cotton Mills, and the freight charges were paid to it by the Exposition Cotton Mills. The simple fact that the Western & Atlantic Railroad Company pushed these cars from its track to the track of the Georgia Pacific railroad in Atlanta, and the latter carried the cars two miles and a quarter to the mills, could not make the latter, under this contract, the last road receiving the machinery, under a proper construction of the contract. The bill of lading upon which this machinery was shipped, stipulated that the

roads therein mentioned would deliver the machinery to the Exposition Cotton Mills in Atlanta. It does not seem to us to make any difference whether the Western & Atlantic Railroad Company delivered the machinery to the Exposition Cotton Mills in drays, wagons, or by getting the Georgia Pacific Railroad Company to haul the cars on its road with an engine, and deliver them at the mills, two miles and a quarter from the depot in Atlanta. The Western & Atlantic Railroad ·Company claimed protection under this bill of lading; but if it is entitled to protection thereunder, as we will show in the progress of this opinion, we think it is bound by the other terms of the contract, which put upon it the duty to deliver this freight to the Exposition Cotton Mills. Besides, it appears that the Georgia Pacific Railroad Company received nothing for carrying these cars from the depot to the mills, but that the Western & Atlantic Railroad Company received the whole freight charges.

2. We now come to the main and important point in the case. It seems to us that, under the pleadings, the case was tried in the court below upon a wrong theory. The declaration alleges that, in September, 1882, the defendant was one of the connecting railroads of a continuous line from Boston, Massachusetts, to Atlanta, Georgia; that on the 20th of October, 1882, it received from the East Tennessee, Virginia & Georgia Railroad Company, at Dalton, Georgia, the following cotton mill machinery (describing it); that the machinery was of a delicate nature and easily injured by exposure to rain or moisture; that it was negligently transported by the defendant in open cars, so that it was exposed to rain, and was rained on for five days and greatly injured and damaged. The case was tried in the court below on the idea that it was an action brought under section 2084 of our code. All the rulings and charges of the trial judge

were predicated upon that idea. It will be observed that no allegation is made in the declaration that the goods were received by the Western & Atlantic Railroad Company as in "good order," but the allegation is simply that they were received by it from the East Tennessee, Virginia & Georgia Railroad Company. From the evidence offered and the points made on the trial by the defendant's counsel in the court below, it would seem that his idea was, that this was a common law action, and not founded on the rule of liability laid down in the code. We are inclined to think that counsel for the defendant was right and the trial judge wrong. The liability of the railroad company in the two actions is entirely different. The code, §2084, declares, that " where there are several connecting railroads under different companies, and the goods are intended to be transported over more than one railroad, each company shall be responsible only to its own terminus and until delivery to the connecting road ; the last company which has received the goods as 'in good order' shall be responsible to the consignee for any damage, open or concealed, done to the goods, and such companies shall settle among themselves the question of ultimate liability." Our code declares that the plaintiff "shall plainly, fully and distinctly set forth his cause of action." We think that when a plaintiff sues a railroad company for loss or damage to goods *in transitu*, and relies upon the provisions of this statute for recovery, he should put the defendant on notice thereof, by proper allegations in his declaration. As we have said before, the proof to be made in the case, and the liability of the company, are entirely different in the two actions. Under this section of the code, when the last road receives freight as in good order, it is estopped by this statute from setting up any defence as to the

loss or injury of the goods, except perhaps that they were injured or damaged before shipment. It cannot relieve itself of liability by showing that the goods were damaged on other railroads. It is bound to pay all damage occurring to the goods on its connecting lines, and trust to a settlement with its connecting lines or with the road which actually did the injury. While on the other hand, if sued on its common law liability, the railroad company can relieve itself of liability by showing that the goods were damaged on a connecting line before it received them. Although the presumption of law would be that the last road received the freight in good order, it could rebut that presumption by proof. Under this form of action, the last road is also entitled to all the benefits and exceptions reserved in the contract made between the shipper and the first carrier who received the goods, where it is a through contract. In this case, the defendant offered proof to show that the machinery was damaged before the defendant received it; and the court refused to allow the proof to be made. It also tried to avail itself of the benefits and exceptions of the contract made with the first carrier, and this was also disallowed by the court. We think that under this declaration, the defendant was entitled to relieve itself of liability by making this proof.

3. This contract in the bill of lading limiting the liability of the carrier would not have been a good contract in Georgia. But it seems that under the laws of Massachusetts, it is a good contract in that State. It not being intended by the parties to take effect wholly in Georgia, but to be partly performed in several different States, including Massachusetts, it can be enforced here. It would be unjust to hold, under this declaration, that the defendant company could not avail itself of the benefit of this contract, and that it

must pay the damages here and settle with its connecting lines, when those connecting lines, under the laws of their States, could rely upon the contract and defeat a recovery when sued by the Georgia company.

Of course none of the carriers could exempt themselves from liability arising from their own negligence. Although the goods were shipped at the owner's risk, and the carriers were not to be liable for damages caused by the weather or rust, still if the damage was caused by the weather or rust, occasioned by the negligence of the carrier or by unreasonable delay upon the road, the carrier guilty of the negligence would be liable. The owner could well say, "While I agreed to take the risk, I did not agree to take the risk of your negligence. I agreed to take the risk of the weather in open cars, if delivered within a reasonable time; but I did not agree to take the risk of the weather for over thirty days, when you should have delivered in ten." We also think that if the shipper of this machinery agreed that it might be loaded and transferred upon open cars, the railroads should not be held liable for any damage caused by its being so loaded, or any damage which occurred during its transportation by reason of its being in open cars. The carrier should be held liable only for its own negligence, or for the damage caused by its unreasonable detention on the road. If ordinary diligence required the carrier to cover these cars during a detention on the road, and it failed to do so, it would be liable for any damage occurring while thus detained, if the damage arose from the want of such covering. These being the rules of law controlling this case, under the pleadings, and the trial judge having failed to apply them, it follows that his judgment must be reversed.