FORRESTER *v.* THE GEORGIA RAILROAD AND BANKING CO.

1. A receipt by a railroad company in these words: "Bill of lading for vegetables, fruits and melons. Issued by the S., F. & W., Pelham, Ga., July 1st, 1891. Received of J. R. Forrester, in apparent good order (inward condition and value of contents unknown) one car said to contain melons, consigned, marked and described as follows: 'Futch & Co., Augusta, Ga., S. A. M. 3151, via Cordele, articles melons,'" is a receipt for a consignment of melons as in good order and where the car containing the same was delivered to another railroad company whose line formed one of several connecting railroads between the point of shipment and the point of destination, the presumption, in the absence of proof to the contrary, is that this company also received the melons "as in good order," and unless the presumption is repelled by evidence, the carrier is liable accordingly.

2. The evidence showing that a particular freight-car, bearing a specific number, and laden with melons, was shipped from Pelham, a point on the line of the S., F. & W. railway, and consigned to Augusta, that this identical car was afterwards in the possession of the defendant company at Augusta, and that this company sent to the consignee a bill for the freight, the fact that the defendant's railroad was one of a line of connecting railroads between Pelham and Augusta was sufficiently established.

3. The presumption being that the melons were delivered to the defendant in good order, the burden of proof was on it to show, either that when the original company received the melons they were in a damaged condition, or that they had become so after shipment without fault on the part of any of the carriers. This is true, although the melons were freight of a perishable nature, and would, by mere lapse of time, become worthless from natural inherent causes. Notwithstanding this fact, it was, in view of the

plaintiff's evidence tending to show that the time consumed in transportation was apparently longer than necessary, incumbent upon the defendant to prove that, in fact, there was no unnecessary nor negligent delay by any of the carriers which caused or contributed to the damaged condition of the fruit.

4. The court erred in granting a nonsuit.

November 27, 1893.

Action for damages. Before Judge EVE. City court of Richmond county. November term, 1892.

E. B. BAXTER and J. R. LAMAR, for plaintiff.

J. B. CUMMING and BRYAN CUMMING, for defendant.

LUMPKIN, Justice.

1. It is quite probable that the receipt copied in the first head-note was made out upon a printed blank, the use of such blanks being a custom common among railroad companies. It is one, however, which often leads to confusion and embarrassment, because shipments are frequently made to the terms and conditions of which the words in the printed forms are inappropriate. The language of the receipt in question certainly suggests an instance of this kind; but it is immaterial to the purpose in hand whether this particular receipt was made out on a printed blank, or was expressly prepared with reference to the car of melons delivered by Forrester to the railroad company. In either event, we think a fair construction of its terms leads to the conclusion that it should be regarded as a receipt for a consignment of melons as "in good order." The receipt acknowledges that Forrester had delivered to the company, "in apparent good order (inward condition and value of contents unknown), one car said to contain melons," and at the bottom of the receipt we find the words, "articles melons." Whatever the company did receipt for was "in apparent good order," and this is, in effect, an admission by the company that the consignment, in so far as it was open to inspection, was in actual good order. If

the receipt means that the thing receipted for was the car, it is obvious that the agent of the company must have known it was loaded with melons, and to this extent, at least, the statement that the inward condition and value of the contents were unknown cannot be literally true. If the things the inward condition and value of which were unknown were the melons themselves, this would necessarily be true in any case of a shipment of melons, unless it could be discovered from an inspection of them externally that their contents must be unsound. Taken all together, we think this paper is simply a receipt for a carload, or partial carload, of melons, and that its real meaning is that the melons themselves were in "apparent good order," which, as already remarked, is the same thing, so far as the company is concerned, as stating that they were in actual good order. This receipt was given by the carrier to which the melons were delivered at the initial point of shipment. It does not appear that the defendant company gave any receipt at all for this consignment of melons; but it does appear that this particular car of melons was delivered, in the course of its transportation to destination, to the defendant company, and, as will be shown in the next division of this opinion, that the line of this company formed one of several connecting railroads between the point of shipment and the point of destination. This being so, and the first company having receipted for the melons as in good order, it will be presumed, in the absence of proof to the contrary, that they were in like good order when received by the defendant company; and unless this presumption be repelled by evidence, the carrier will be held liable accordingly. So this court ruled in *Evans & Ragland* v. *A. & W. P. R. R. Co.*, 56 *Ga.* 498; *Central Railroad* v. *Rogers & Sons*, 66 *Ga.* 251; *Georgia Railroad* v. *Gann & Reaves*, 68 *Ga.* 350; *Central Railroad & Banking Co.* v. *Bayer et al.*, 91 *Ga.* 115, 16

S. E. Rep. 953, and perhaps in other cases ; nor are we aware of any ruling by this court which, properly construed, is to the contrary.

2. We do not think there can be any doubt, under the evidence contained in this record, that the railroad of the defendant was one of a line of connecting railroads between Pelham and Augusta. The receipt shows that a particular freight-car, lettered " S. A. M.," numbered 3151, and laden with melons, was shipped from Pelham, a point on the line of the Savannah, Florida & Western railway, and consigned to Augusta, and that this identical car, thus laden, was afterwards in the possession of the defendant company at Augusta, and that this company sent to the consignee there a bill for the freight. We know from common knowledge and every-day experience that a railroad freight-car cannot be conveyed through the country except upon the rails of a railroad track. We also know that the tracks of the Savannah, Florida & Western Railway Company do not extend to Augusta, and that they do not connect directly with the tracks of the defendant company. This information may be derived by reference to the charters of these companies, of which we may properly take judicial cognizance, even if it be not permissible to avail ourselves of a knowledge of the facts stated from general sources. It follows, therefore, that there are railroad tracks all the way from Pelham to Augusta; that some of these tracks connect the lines of the Savannah, Florida & Western railway with that of the Georgia railroad ; and that the car in question must have reached the tracks of the last named road from one of these connecting lines. See *Bayer's* case, *supra.*

3–4. Under section 2084 of the code, the last of several connecting railroad companies which has received goods as in good order shall be responsible to the con-

signee for any damage, open or concealed, done to the goods, and the several companies are left to settle among themselves the question of ultimate liability. It has already been shown that, presumptively, the defendant in this case received the car of melons " as in good order," and this would be sufficient to throw upon the defendant the burden of showing that this presumption was not, in fact, the truth of the case. In other words, the defendant, until the presumption has been rebutted, stands exactly as though the plaintiff had affirmatively shown that the defendant company did actually receipt for the melons as in good order. The defendant can only escape the liability imposed upon it by the above cited section of the code by showing that, as matter of fact, it did not so receive and receipt for this consignment. Unless this is done, the defendant, as to liability to the plaintiff, stands in the place of the initial carrier, and its defence must rest upon the same grounds. It could, for instance, show that, though apparently in good order, the melons were in fact damaged before they were delivered to the Savannah, Florida & Western railway: *Central R. R. & Banking Co.* v. *Rogers' Sons*, 57 *Ga.* 336. Or, the defendant could show that after shipment the melons became damaged without fault on the part of any of the connecting carriers. We understand section 2084 of the code to mean that, ordinarily, each of several connecting railroads shall be responsible only to its own *terminus* and until delivery to the next connecting carrier; but if any company, either actually or constructively, receives a consignment of freight " as in good order," it will become responsible even though the goods, before delivery to it, were damaged through the negligence of some other carrier, and it must look to the company actually at fault for reimbursement. The policy of the law is to relieve the patrons of railroad companies of the burden and diffi-

culty of ascertaining and fixing liability on that one of the several connecting carriers handling the shipment upon whose line the damage occurred. It is expressly provided, however, that this liability shall extend only to such of the connecting carriers as shall have received the consignment "as in good order," and in order for any particular company to protect itself from the liability imposed by section 2084, it has simply to decline to receive goods as in good order when in point of fact they are not.

It was contended that as this section imposes liability for damage "done to the goods," it was not applicable to freight like melons which, being of a perishable nature, would, by the mere lapse of time, become worthless from natural inherent causes. This court has ruled to the contrary in *Central Railroad & Banking Company* v. *Hasselkus et al.*, 91 *Ga.* 382, 17 S. E. Rep. 838. Injury from inherent qualities is somewhat in the nature of damage resulting from the act of God, and even in a case of that kind, the carrier must show that the injury was caused by the act of God unmixed with negligence on its part. *Richmond & Danville R. R. Co.* v. *White & Co.*, 88 *Ga.* 805, and cases cited. Unreasonable delay in forwarding fruit would be negligence, because prolonging the time within which, by the operation of natural laws, decay would be produced, and therefore such negligence would contribute to causing the damage. Indeed, in some instances, but for such unreasonable delay, there might be no damage at all. We therefore think it was incumbent upon the defendant to show that there was no unnecessary nor negligent delay by any of the carriers which caused or contributed to the damaged condition of the melons. It is true the plaintiff did not directly and positively show that the time consumed in the transportation of these melons was unreasonable or longer than usual and neces-

sary; but in view of all the facts contained in the record, there was apparently more delay in getting the melons to Augusta than was reasonable or necessary. The time actually consumed was about seven days. As Augusta and Pelham are both in the State of Georgia, it would seem that the transportation of this car from one of these points to the other ought to have been accomplished in a much shorter period of time, under ordinary circumstances. If this is not so, or the time was not in fact unreasonable under the peculiar circumstances attending this shipment, the railroad company could easily so prove, and in our opinion, ought to do so. Had the transportation been completed in two or three days, the above view would not, perhaps, be appropriate; but under the facts as they now appear to us, we think the plaintiff proved enough to require the defendant to make a showing on the question of diligence. If the transportation was unreasonably delayed, and the damaged condition of the fruit resulted from such delay, the defendant, so far as this branch of the case is concerned, would be liable; but it would not be liable if the damage to the melons would have occurred during the lapse of a reasonable time consumed in their transportation.

The evidence does not distinctly show that the melons, on reaching Augusta, were absolutely worthless, but it does show that they were stale; and in the absence of proof showing that stale melons have some commercial value, the jury would be authorized to find they were in fact worthless.

On the whole, we think the plaintiff made out such a *prima facie* case as to require the railroad company to make a defence, and consequently, our conclusion is that the court erred in granting a nonsuit.

*Judgment reversed.*