## International & Great Northern Railway Company v. Diamond Roller Mills.

### Decided October 19, 1904.

**1.—Last Carrier—Presumption as to Damage—Burden of Proof.**

The burden of proof is upon the shipper to establish the condition of goods when delivered to the initial carrier, in order that the presumption of injury in the hands of the last carrier should attach upon proof of delivery in damaged condition.

**2.—Same—Connecting Lines—Evidence—Bill of Lading.**

A bill of lading issued by the initial carrier, though evidence of a contract as against a connecting line receiving and transporting the goods under it, is not as a mere receipt for the goods, evidence as against the terminal carrier, not a party to its execution, of their good condition when delivered to the initial carrier.

**3.—Carrier—Condition of Goods—Evidence—Inspector's Certificate.**

The certificate of an inspector under the laws of Missouri as to the condition when delivered to the initial carrier, is not evidence as against the terminal carrier in Texas, at least in the absence of proof as to the effect given to such certificate by the laws of Missouri.

**4.—Hearsay.**

Evidence of witness shown by cross-examination not to be derived from his personal knowledge, should be excluded.

Appeal from the County Court of Williamson. Tried below before Hon. Chas. A. Wilcox.

*S. R. Fisher* and *J. H. Tallichet,* for appellant.

FISHER, Chief Justice.—This is a suit by the appellee against the railway company for damages in the sum of $516.22, resulting to a shipment of corn from St. Joseph, Mo., to Taylor, Texas. The corn was found partly in a damaged condition when it reached Taylor. When and where the damage or injury to the corn occurred, the evidence does not inform us. The corn was delivered to some railway company at St. Joseph, Mo., billed to the appellees at Taylor, Texas. The appellant's line does not extend to St. Joseph, Mo., and, so far as the evidence shows, it had no contract or business connection with the carrier at St. Joseph, Mo., that issued the bill of lading and received the corn for shipment, and it appears from the evidence that the appellant's road received the shipment in the course of its transportation merely as a connecting carrier.

The initial carrier issued a bill of lading which recited the quantity and quality of the corn, stating that it was in apparent good condition, and that the shipment contained 64,400 pounds. There is no evidence in the record connecting the appellant's road with this bill of lading, or that it was a party to the contract under which the same was issued or had any business association or connection with the carrier that issued it.

As in effect stated before, there is no evidence in the record which shows that this corn was damaged or injured while in the custody of

the appellant's road, but the trial court held the appellant liable, evidently upon the presumption of law that attaches liability to it as the last carrier. Independent of the recitals contained in the bill of lading and an inspector's certificate, issued by an officer in Missouri, there is no evidence in the record indicating what was the condition and quality of the corn when delivered to the initial carrier and started on its transportation.

The appellant by proper bill of exception objected to the introduction of the inspector's certificate issued by the officer of the State of Missouri, and to the recitals contained in the bill of lading showing the quality of the corn in question. As stated before, the appellant was not a party to the certificate issued by the inspecting officer in the State of Missouri, nor was it a party to the bill of lading. Both of these objections were well taken, and the court erred in admitting this testimony.

In order to hold the last carrier liable under the presumption of law that creates liability against it, the burden is upon the shipper to introduce evidence tending to establish the quality and condition of the article shipped at the time it was started or at the time it was delivered to the initial carrier; and the only attempt to discharge this burden was the introduction of the evidence objected to. A bill of lading may be used against the carrier that is not connected with its execution in some respect as a contract between the consignee and the carrier that issued the bill, as an evidence of right in the consignee to demand the shipment from the last carrier. The bill of lading is evidence of right in the consignee, and upon tender of that bill to a carrier who is not a party to it, but who has possession of the property, the shipper or consignee, as the case may be, who has possession of the bill and is the owner of the property, can demand possession of the same by virtue of the ownership displayed by the bill of lading. Grayson County Nat. Bank v. Nashville, C. & St. L. Ry. Co., 3 Texas Law Journal, 979, 79 S. W. Rep., 1096. But as said in the case of Texas & P. Ry. Co. v. Kelly, 74 S. W. Rep., 343: "Defendant having accepted the shipment for transportation from Texarkana under said bill of lading, was bound by it, in so far as it was a contract; but in so far as it was a mere receipt for the goods, the rule is different. As a receipt of the stoves from the shipper it was the act and admission of the carrier that so receipted, and prima facie evidence against it. It seems to us an indefensible proposition that another or connecting carrier is affected by such an admission. Railway Co. v. Benjamin, 63 Ill., 283; Evans v. Railway Co., 56 Ga., 498."

There is no law in this State that provides for a certificate similar to that issued by the inspector in the State of Missouri, and what the law is there, if any, upon that subject, we are not informed. The statement of that inspector in his certificate as to the quantity and quality of the goods shipped is a mere ex parte hearsay statement, that in no wise affects the appellant. Whether such a certificate, if admissible

under the laws of Missouri and serviceable as evidence there, would be admissible here by virtue of such laws, is a question that we are not now called upon to decide, because that question is not raised.

The appellant's third assignment of error is also well taken. That portion of the testimony of the witness Seiders that related to what occurred prior to the arrival of the corn at Taylor, and prior to his personal knowledge of any matter connected with the transaction, should have been excluded. From the cross-examination of this witness, as shown by the bill of exception, it appears that much of his testimony was concerning matters of which he had no personal knowledge.

What we have said in effect disposes of appellant's fourth, fifth, sixth, seventh, eighth and ninth assignments of error.

In disposing of the tenth and eleventh assignments of error, it is only sufficient to say that the facts in the record show an ownership in the appellees that would entitle them to recover the damages, if any, sustained to the corn.

For the errors stated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*