## 2827.  LOUISVILLE & NASHVILLE RAILROAD CO. *et al. v.* BURNS.

1. In an action brought to enforce the statutory liability against the last connecting carrier of several railroads for damage to a shipment transported by them, the last company which received the goods "as in good order shall be responsible to the consignee for any damage to the shipment, open or concealed," and the question as to the ultimate liability must be settled among the railroads themselves.

2. Where, in an action brought to recover such damages, the plaintiff proves that the shipment was in bad order when the consignee received it from the last connecting carrier, it is to be presumed prima facie that, if the shipment had not been in good order when received by the last connecting carrier, the latter would have refused to receive it otherwise than as in bad order; and therefore, upon proof that the shipment was delivered in bad order to the consignee by the last connecting carrier, the plaintiff has established a prima facie case of liability, and casts upon the carrier the burden of showing that it did not in fact receive the shipment as in good order.

DECIDED APRIL 24, 1911.

Action for damages; from city court of Washington—Judge Wynne. July 11, 1910.

Joseph B. & Bryan Cumming, W. A. Slaton, for plaintiffs in error.

I. T. Irvin Jr., contra.

RUSSELL, J. When this case was previously before this court (*Burns v. Louisville & Nashville Railroad Co.,* 6 Ga. App. 614, 65 S. E. 582) only one question was considered. This court held that the failure to deliver the shipment at destination in good order was not only a breach of the contract of carriage, but also a breach of the carrier's public duty, each and both theoretically located at the place of performance, and that therefore the court erred in holding that it had no jurisdiction of the complaint. It appears, from the evidence in the present record, that Burns delivered to the Wabash Railroad Company, at Marysville, Mo., a car-load of stock, to be transported to Washington, Ga. When the shipment arrived in Washington, and after delivery to the consignee, it was discovered that one of the horses shipped had been taken and an inferior horse substituted therefor. The defendants introduced evidence showing that they had received the car-load of stock from the Western & Atlantic Railroad Company, at Atlanta, loaded and sealed, and accounted for the safety of the stock all the time it was in their possession, and proved by direct evidence that the substitution did not occur on their lines.

The court, sitting without a jury, found in favor of the railroad companies, but upon motion for a new trial set aside this judgment and granted a new trial, upon the grounds that the defendants failed to rebut the presumption that they gave a receipt for the car of live stock as received in good order from the connecting carrier. It is assigned as error that the judge erred in granting a new trial, because, it is insisted, the burden of proof was upon the plaintiff to show that the defendants in fact received the goods as in good order, and that the plaintiff, not having introduced any evidence upon this subject, failed to. make out his case. The real question, then, which arises in the case, is whether or not the railroad companies could defend against the present action without showing by affirmative proof that they had not received these goods from the prior carrier, and had not receipted for them as in good order, within the terms of the Civil Code (1910), § 2725.

1. We think the judgment granting a new trial was correct. The decision is controlled by the rulings of the Supreme Court in *Forrester* v. *Ga. R. Co.*, 92 *Ga.* 702 (19 S. E. 811), and *Susong* v. *Fla. C. & P. R. Co.*, 115 *Ga.* 363 (41 S. E. 566). In the *Forrester* case, supra, which is very similar to the case at bar, Judge Lumpkin, in delivering the opinion of the Supreme Court, says: "It has already been shown here, presumptively, that the defendant in this case received the car of melons as in good order, and this would be sufficient to throw upon the defendant the burden of showing that this presumption was not, in fact, the truth of the case. In other words, the defendant, until the presumption has been rebutted, stands exactly as though the plaintiff had affirmatively shown that the defendant company did actually receipt for the melons as in good order. The defendant can only escape the liability imposed upon it by the above-cited section [Civil Code (1910), § 2752], by showing, as a matter of fact, it did not so receive and receipt for this consignment."

The reason why the presumption adverse to the carrier is to be indulged as to all of the incidents imposing liability, when it is proved that the shipment was delivered in bad order by the last of a series of connecting carriers, is referred to by Judge Lumpkin in the *Forrester* case, and this reason would seem to impose upon the carrier·the burden of disproving a presumption that the damaged shipment was actually received from the connecting carrier as in good order, rather than to impose upon the plaintiff the burden of proving as a part of his case the fact that the shipment was actually so received as in good order by the last connecting carrier. Judge Lumpkin says: "We understand section 2084 of the Code of 1882 [now section 2752 of the Civil Code of 1910] to mean that ordinarily each of the several connecting railroads shall be responsible only to its own terminus and until delivery to the next connecting carrier; but if any company, either actually or constructively, receive a consignment of freight as in good order, it will become responsible, even though the goods, before delivery to it, were damaged through the negligence of some other carrier, and it must look to the company actually at fault for reimbursement. The policy of the law is to relieve the patrons of railroad companies from the burden and difficulty of ascertaining and fixing liability on that one of the several connecting carriers handling

the shipment upon whose line the damage occurred. . . In order for a particular company to protect itself from the liability imposed by this section, it has simply to decline to receive goods as in good order, when in point of fact they are not."

·In the *Susong* case, supra, the ruling in *Forrester* v. *Georgia Railroad Co.* was cited and the court held that, "if a railroad company received from another railroad company goods to be transported and receipts for them as in good order, the company so receiving and receipting is, under the terms of this section, con-cluded by the receipt from setting up, as against the consignee, that the goods were in fact not in good order when received. If such company receives the goods without receipting for the same as in good order, there is still the presumption that the goods were so received; but this presumption may be rebutted, by showing that no receipt was given, and that the goods were in fact not in good order when received. "

2. Under the rulings in these two cases, as well as what is said in *Western & Allantic Railroad Co.* v. *Exposition Cotton Mills,* 81 *Ga.* 527-529 (7 S. E. 916, 2 L. R. A. 102), it seems to be clear that in cases brought to enforce the statutory remedy, the burden devolves upon the last of a series of connecting carriers which delivers a shipment in bad order to establish, as a matter of defense, that the goods were in fact not receipted for by it as in good order, or that they were injured and damaged before they were ever shipped at all. Certainly, under these decisions, a plaintiff, to establish a prima facie case of liability, is not required to prove that the goods were in fact received by the last connecting carrier as in good order, but in lieu thereof may rely upon the presumption that the last connecting carrier would not have received them unless the shipment had been in good order, as supplying one of the essential elements of that prima facie case, and such a state of facts as that it can conclusively be presumed that the shipment was damaged while in the hands of one of the carriers engaged in the transportation. It is immaterial, so far as the shipper is concerned, which carrier is ultimately liable for the damage, or to which one it is directly traceable; for the law has declared, for his protection, that the question of ultimate liability shall be settled between the carriers themselves.

We conclude, therefore, that the trial judge did not err in.

granting a new trial. Presumptively the car-load of horses and mules involved in this case was received by the Louisville & Nashville Railroad Company as in good order. It devolves upon it to show that it did not receive the car as in good order. In an action brought, as this case was, under the provisions of section 2752 of the Civil Code of 1910, the important fact to establish is whether the same goods which were received as in good order by the last connecting carrier were delivered to the consignee. It does not matter whether the last connecting carrier, or some other carrier, actually did the damage. The only question is whether the last connecting carrier received the goods as if they were in good order. As the question of ultimate liability is to be settled between the carriers themselves, and as the law designs to relieve shippers from the almost impossible task of showing which one of several carriers actually damaged the shipment, the only real point upon which a carrier can base a defense is whether the last connecting carrier received the shipment as in good order; for if the last connecting carrier received the goods, knowing they were in bad order, it might be protected from liability by an agreement with the carrier from which it received the shipment, or its acceptance of the shipment in bad order might be treated as a waiver of any claim the last connecting carrier might have against preceding carriers for the damages to which the last connecting carrier itself might become liable to the shipper.     *Judgment affirmed.*