### 3678.　HARTWELL RAILWAY CO. *v.* KIDD.

1. Where goods transported over the line of more than one carrier are damaged in transit, the holder of the bill of lading may sue the delivering carrier either for the breach of its implied obligation to deliver promptly and safely, or upon its statutory liability as the last carrier which received the goods "as in good order."  Where, in such a suit, there is no allegation that the carrier received the goods as in good order, the action will be construed as being one based upon the common-law liability of the carrier.
2. An action against a carrier, based upon its common-law liability for damage to goods shipped, can not by amendment be converted into a suit founded upon the statutory liability created by § 2752 of the Civil Code (1910).
3. Although, when a suit against a connecting carrier for damage to goods in transit is based upon the common-law liability of the carrier, there is a presumption that the goods were received in good order, this presumption may be rebutted; and when, in such a suit, it affirmatively appears that the goods were delivered to the plaintiff in the condition in which they were received by the carrier, a recovery is unauthorized.
4. Courts will not take judicial cognizance of the schedule of rates filed by a carrier with the interstate-commerce commission and published as required by the acts of Congress.  A recovery as for an overcharge in freight upon an interstate shipment is not authorized when there is no proof of the lawful rate which the carrier is allowed to demand.
5. The evidence was not sufficient to authorize a recovery as for an overcharge for feeding the live stock which were the subject-matter of the contract of carriage.

DECIDED MARCH 19, 1912.

Action for damages; from Hart superior court—Judge Meadows. July 29, 1911.

The action was brought in a justice's court, to recover $95.75, embracing three items of alleged damages, and was tried on appeal in the superior court. In the cause of action attached to the summons it was alleged, that 10 head of live stock were delivered at Maryville, Tenn., to a connecting carrier of the defendant, to be delivered to the plaintiff at Hartwell, Ga.; that there was unreasonable delay in delivery, caused by the negligence of the defendant; that the stock were not properly watered and fed, and were exposed to bad weather, which resulted in colds, distemper, and other diseases, and thereby reduced the market value of the stock in the sum of $80; that the defendant collected $10 for watering and feeding the stock, when $5 was the proper charge; and that the collectible rate of freight on the shipment was $59.25, and the defendant exacted $70, an overcharge of $10.75.

The defendant demurred, on the ground that the plaintiff had combined a suit on contract with an action ex delicto. The demurrer was overruled, and exception was duly taken to this judgment. Over objection of the defendant, the plaintiff was permitted to amend by alleging that the defendant received the stock "as in good order," and was liable under § 2752 of the Civil Code of 1910, for $80, damages. The objection was that the amendment set forth a new cause of action; and exception was duly taken to the allowance of this amendment.

The defendant answered, that it did not feed and water the stock, and that it made no charge therefor; that it did not receive from the plaintiff any part of the freight charges, but they were paid by the shipper to the initial carrier, the Louisville & Nashville Railway Company; that the defendant did not damage the stock, but delivered the shipment to the plaintiff promptly, in the condition in which it was received from the initial carrier. By amendment the defendant pleaded a special contract made with the initial carrier, under the terms of which, as a condition precedent to the recovery of damages for injury to the stock, the plaintiff was required to give written notice to the agent of the delivering carrier, before the stock was removed from the place of shipment and mingled with other stock.

The plaintiff recovered the full amount sued for, and the defendant's motion for a new trial was overruled.

*James H. Skelton*, for plaintiff in error.

*W. L. Hodges*, contra.

POTTLE, J.   1.   When goods are delivered to a carrier and direction given to ship to a designated point, the law implies a promise to transport at the lawful rate by the nearest practicable route; and this implied promise extends to every carrier who handles the shipment. Where goods transported over the line of more than one carrier are damaged in transit, the person entitled to recover the damages may sue upon the common-law liability arising upon the implied promise, or upon an express contract, if one was made, or, in this State, he may bring his action under the Civil Code (1910), § 2752, against the last carrier receiving the goods "as in good order." In the present case it is manifest that the suit as originally brought was not brought under this section of the code, there being no allegation that the defendant received the goods "as in good order." A general averment of negligence on the part of the defendant will not suffice to take the place of this essential allegation. No express contract is pleaded by the plaintiff, and it is clear that the suit is predicated upon the carrier's common-law liability. The case of *Western & Atlantic R. Co.* v. *Exposition Cotton Mills*, 81 *Ga.* 522 (2), (7 S. E. 916, 2 L. R. A. 102), is directly in point, as is also *Central Ry. Co.* v. *Jones*, 7 *Ga. App.* 165 (66 S. E. 492).

2.   Where goods conveyed over the line of more than one carrier are damaged in transit, and suit is brought against the last carrier, upon the common-law liability, the defendant is presumed to have received the shipment in good order; but this presumption may be rebutted by proof that the goods were delivered to the consignee in the same condition in which they were received by the defendant. But where the suit is brought upon the statutory liability, the carrier's receipt of the goods "as in good order," without exception, is conclusive upon the carrier. *L. & N. R. Co.* v. *Burns*, 9 *Ga. App.* 241 (70 S. E. 1112), and cit.; *Southern Ry. Co.* v. *Waters*, 125 *Ga.* 520 (54 S. E. 620); *Susong* v. *Ry. Co.*, 115 *Ga.* 361 (41 S. E. 566). Under this statute the carrier is estopped to deny liability, without reference to whether it occasioned the damage, when it either actually or constructively received the goods "as in good order." This

is totally different from the common-law liability, under which the carrier is held responsible only for its own negligence. Hence it is that a suit brought against a carrier for its own negligence under its common-law liability can not, by amendment, be converted into an action to enforce the statutory liability. *Exposition Mills* v. *W. & A. R. Co.*, 83 *Ga.* 441 (10 S. E. 113); *Kavanaugh* v. *Southern Ry. Co.*, 120 *Ga.* 62, 67 (47 S. E. 526, 1 Ann. Cas. 105). The court erred in allowing the amendment.

3. As the evidence demanded a finding that the defendant promptly delivered the car to the plaintiff, and that the stock were not injured while in its possession, a verdict in the plaintiff's favor was unauthorized, so far as the sum claimed as damages for injury to the stock was concerned.

4. Carriers engaged in interstate commerce are required by the act of Congress to file with the interstate-commerce commission schedules showing all the rates and charges for transportation between different points on its own route and points on the route of any other carrier, when a through route and a joint rate have been established. These schedules are required to be posted in two conspicuous places at every point where the carrier receives passengers or freight, respectively, in such form that they can be conveniently inspected by the public. See 2 Hutch. Carr. (3d ed.) 578. The jury found in favor of the plaintiff $10.75 for overcharge in the transportation rate. There was no evidence as to whether the initial carrier had filed and published a schedule of transportation charges, or established through routes and reasonable rates applicable thereto, as required by law. The only evidence in the record as to the lawful transportation charge is the statement of the plaintiff that the agent of the Southern Railway Company told him the rate was $59.25, and that he had previously shipped a car over the Southern Railway from Maryville, Tennessee, to Hartwell, Georgia, at that rate. Manifestly this is no proof of the lawful rate which the carriers were entitled to collect. Without reference to whether the courts will take judicial notice of the rules and regulations of the interstate-commerce commission without proof (as to which, see *Wadley Sou. Ry. Co.* v. *State*, 137 *Ga.* 497 (73 S. E. 744), where the Supreme Court declined to take notice, without proof, of the existence or non-existence of a rule of the State railroad commission), or whether the courts know

judicially the maximum rate which a carrier is allowed to charge:. in a given case between points within this State, the maximum rates for intrastate shipments being prescribed and promulgated by the rules and regulations of the State commission, we can not take judicial cognizance of interstate rates and tariffs. The inter-state-commerce commission does not primarily fix interstate rates. They are fixed and promulgated by the carrier, under the super-visory control of the commission, with the right, upon complaint in a given case, to require the rate to be changed. When carriers have failed voluntarily to establish joint rates and through routes, the commission has power to do so.

The rates as filed and published being conclusive on both ship-per and carrier, it is no great hardship on a shipper who claims an overcharge to require him to furnish the proof to sustain his claim. We may presume that the carrier has filed and published a schedule of rates as required by law, but we do not think we are bound to know, without proof, what is the published and authorized through rate on a car of live stock from Maryville, Tennessee, to Hartwell, Georgia. The evidence shows that there was a written contract of affreightment with the initial carrier, under which it guaranteed that the total freight rate would not exceed $70. This was the sum collected, and, in the absence of proof to the contrary, it must be assumed that the carriers did not exact more than the law permitted them to collect. We may say, in passing, that we have taken pains to refer to a copy of the published rates on file with the interstate-commerce commission, and the rate collected appears to be the same as that specified in the published tariff. If the rate charged was the rate filed and published, it of course follows that no action can be maintained in a State court to recover as for an overcharge, upon the theory that the rate is unreasonable. *Southern Ry. Co.* v. *Moore,* 133 *Ga.* 806, 818 (67 S. E. 85, 26 L. R. A. (N. S.) 851). The rate agreed upon between the initial carrier and the shipper being the rate collected, no question is presented as to the right of the connecting carrier to collect a greater rate, if the one fixed by the initial carrier was less than the maximum lawful rate. See *Goodin* v. *Southern Ry. Co.,* 125 *Ga.* 630 (6 L. R. A. (N. S.) 1054, 5 Ann. Cas. 573).

5. If the defendant exacted of the plaintiff more than the initial carrier paid for feeding and watering the live stock, or more

than a just and lawful charge for this service, the plaintiff can recover the overcharge. But the burden is on the plaintiff to prove the illegal exaction. We do not think he carried it in this case. His mere statement that he paid $10 and should not have been charged but $5 will not suffice. He must offer sufficient data to enable the jury to reach a correct conclusion. He does not show how many times the stock were fed, or what was paid by the carrier, or what should have been paid. It does not clearly appear that the charge for feeding was in fact paid to the defendant. The evidence was not sufficient to authorize a recovery of the item for overcharge in feeding. The effect of the act of Congress known as the "Hepburn law," upon the special contract of affreightment made with the initial carrier, and the extent to which such a contract is binding upon the defendant as connecting carrier, are questions with which we do not find it necessary to deal. The demurrer was not only too general, but was without merit.

*Judgment reversed.*