19680. CENTRAL OF GEORGIA RAILWAY COMPANY *v.* CLARK MILLING COMPANY.

DECIDED JUNE 27, 1929. REHEARING DENIED JULY 10, 1929.

*W. Inman Curry,* for plaintiff in error.

*Henry G. Howard, W. M. Howard,* contra.

LUKE, J. Clark Milling Company brought suit in a justice's court against the Central of Georgia Railway Company for a shortage in a shipment of corn, and the justice rendered judgment in favor of the plaintiff. The railway company appealed to a jury in the justice's court, and judgment was again rendered in favor of the plaintiff. The railway company then carried the case, by certiorari, to the superior court, and that court overruled the certiorari and entered up judgment for the Clark Milling Company. This ruling the railway company assigns as error in its bill of exceptions to this court.

The plaintiff introduced in evidence a bill of lading issued by the I. C. Railway Co., at Decatur Ill., showing a shipment of 88,-000 pounds of corn from Harrison, Ward & Company to the Clark Milling Company, Augusta, Ga., and proved that after deducting natural shrinkage of one fourth of one per cent., the weight at destination was 520 pounds short, which, at $1 a bushel, amounted to $9.29, the amount of the verdict rendered in favor of the plaintiff. The plaintiff admitted that the shipment was received at Augusta under the original seals that sealed the car at Decatur, Ill., and that upon examination of the car there was no evidence of any leakage. The evidence further shows that while the car was being unloaded, and as soon as it was apparent that there

was going to be a shortage, the representative of the Clark Milling Company called the representative of the Central of Georgia Railway Company to inspect the car. It is undisputed that 88,-000 pounds of corn were loaded in the car at Decatur, Ill.; that the Central of Georgia Railway Company delivered it to the consignee at Augusta, Ga., under the original seal; that there was no evidence of any cracks or holes in the car at Augusta, and that the shipment, when it arrived in Augusta, was 520 pounds short.

The question for our determination is not who caused the shortage, but whether the defendant is responsible to the plaintiff for the shortage. The railroad company introduced no evidence to show, and makes no contention, that the consignee had disposed of any of the corn before the representative of the defendant company was called to make an inspection. The outturn was actually weighed, as is shown by its being 520 pounds short.

The third paragraph of the plaintiff's petition alleges that "Petitioner brings this action against the Central of Georgia Railway Company on its *common-law liability* for failing to perform its part of the contract of carriage." There is no doubt about the plaintiff's right to sue the terminal carrier in this case. The Carmack amendment in reference to suits against the initial carrier in interstate shipments in no way precludes the plaintiff from proceeding against the terminal carrier in this case. *Central of Georgia Railway Co.* v. *Yesbik,* 146 *Ga.* 769 (92 S. E. 527). In its answer to plaintiff's original petition, the defendant company admitted that the bill of lading called for 88,000 pounds of corn, and that the defendant company was the last carrier of the shipment; and it made no contention in the trial that the full amount called for in the bill of lading was not shipped.

Under the facts of this case and the authorities hereinafter cited, three propositions of law are clearly applicable: 1st. The plaintiff is not required to prove that the loss of the corn was actually occasioned by the fault of the defendant company. 2d. A presumption arises that a shipment of corn was delivered to the defendant company without any deficiency in quantity, and that the loss occurred while the corn was in its possession. 3d. The duty is on the defendant to show that it did not cause the loss.

When the defendant company showed that the car was received under the original seal, and that it found no evidence of any

leakage, this would certainly create a presumption that the defendant company did not occasion the loss; but a mere presumption is not sufficient to negative the presumption created by law. The defendant company should have produced some *affirmative proof* that it did not occasion the loss; and that proof must be sufficient to overcome, to the satisfaction of the jury, the presumption created under the law by the state of facts here proved. The defendant company might have proved that the loss was occasioned by the act of God or the public enemy, or by the shipper. The rule that the plaintiff is not required to trace the one who actually was at fault is an equitable one; because it is more within the power of the defendant company to do so. The evidence does not establish where the loss occurred, and the defendant did not overcome the common-law presumption against it to the satisfaction of the jury. "When goods moving in interstate commerce upon a through bill of lading are delivered in bad condition, and the evidence shows that they were sound when received by the initial carrier, but does not affirmatively establish where the loss occurred, *there is a common-law presumption,* applicable under the Carmack Amendment, *against the delivering carrier,* that the injury occurred *on the delivering* carrier's line." (Italics ours.) Chicago and Northwestern Railway Co. *v.* Whitmack Produce Co., 258 U. S. 369, 372 (42 Sup. Ct. 328, 66 L. ed. 665). And in the opinion it is said: "A connecting carrier, who has completed the transportation and delivered the goods to the consignee in a damaged condition, or *deficient in quantity,* will be held liable in an action for the damage or deficiency *without proof that it was occasioned by his fault,* unless he can show that he received them in the condition in which he has delivered them. The condition and quantity of the goods when they were delivered to the first of the connecting carriers being shown, the *presumption will arise* that they continued in that condition down to the time of their delivery to the carrier completing the transportation and making the delivery to the consignee, and that the injury or loss occurred while they were in his possession." (Italics ours.) We construe the word "show," as used above, to mean show by affirmative proof, and not by creating a presumption. If "it *affirmatively* appears that the goods were delivered to the plaintiff in the condition in which they were received by the carrier," a recovery would be un-

authorized. From the fact that the car was sealed we would *deduce* and *presume* that the goods were delivered to the plaintiff in the same quantity as received by the carrier, but this is not direct, affirmative proof to that effect. The defendant company failed to prove *affirmatively* that it *did not* receive the full quantity of corn. "Where goods received by a common carrier are in due course of transportation delivered to a connecting carrier, and reach the point of destination in a damaged condition, a recovery may be had against the delivering carrier, unless it shows *that it did not receive the goods* as in good order, or, if so, that the goods were damaged *before* delivery to the initial carrier, or that, if the damage occurred in the course of transportation, it was due to no fault on the part of any of the carriers that handled the shipment." (Italics ours.) *Yesbik* v. *Macon, Dublin & Savannah R. Co.,* 11 *Ga. App.* 298 (75 S. E. 207). In that case the suit was based upon the implied obligation of the carrier, and not upon the statutory liability, and Judge Pottle, speaking for the court, said: "It appearing that the shipment was delivered to the defendant as a connecting carrier in due course of transportation, and nothing to the contrary appearing, the presumption is that the bananas were received as in good order. The onus is upon the defendant *to show that they were not so received.* . . Until this presumption is rebutted, the defendant stands as though it had actually received the goods as in good order." (Italics ours.) See also *Hartwell Ry. Co.* v. *Kidd,* 10 *Ga. App.* 771 (74 S. E. 310); *Forrester* v. *Ga. R. &c. Co.,* 92 *Ga.* 699 (1, 3) (19 S. E. 811); *Bell* v. *W. & A. R. Co.,* 125 *Ga.* 513 (3) (54 S. E. 532); *Ill. Central R. Co.* v. *Banks,* 31 *Ga. App.* 757 (2) (122 S. E. 85).

If the loss herein sustained was occasioned by some connecting carrier other than the defendant company, the defendant is best able to ascertain that fact, and has its remedy in the usual settlement between railroads where such shipments are involved. The law does not put the burden upon the plaintiff to locate the fault. The plaintiff has alleged and proved enough to create a common-law presumption against the defendant company, and the defendant company has failed to rebut that presumption to the satisfaction of the trial court, and so we conclude that:

1. Where the consignee of a shipment of goods brings an action against a railway company on its common-law liability for

failing to perform its part of the contract of carriage, the goods moving in interstate commerce upon a through bill of lading and the defendant company being the terminal carrier, and the undisputed evidence shows that the entire goods were received by the initial carrier, but that they were delivered by the defendant company deficient in quantity, but does not affirmatively establish where the loss occurred, there is a common-law presumption against the delivering carrier, and the burden is upon it to prove that the loss resulted from some cause for which it is not responsible in law or by contract.

2. The court did not err in overruling the petition for certiorari and in entering up judgment for the plaintiff.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*