## NAUGATUCK RAILROAD COMPANY *vs.* BEARDSLEY SCYTHE COMPANY.

A quantity of coal was shipped for the port of *B*, consigned to a railroad company having its terminus there and to be transported by the latter to *W*. The bill of lading stated the quantity and the freight per ton. The railroad company paid the freight to the master of the vessel, and transported all the coal received to *W*. On being weighed there after delivery it was found to fall short several tons from the amount stated in the bill of lading. It was the custom of the railroad company, known to the parties for whom the coal was transported, not to weigh coal thus delivered, but to depend on the bill of lading; but in the present case the agents of the road could with ordinary care have observed a deficiency in the quantity. Held, that the railroad company had not made itself liable for the deficiency in the coal, and that it was entitled to the full amount of the freight paid to the master of the vessel.

AMICABLE suit, upon the following agreed statement of facts.

The plaintiffs have an account against the defendants, which is undisputed, amounting to $618.50. The defendants claim to set off against it a demand for $101.98, founded upon the following facts:—On the 28th of October, 1865, the defendants bought of the Pennsylvania Coal Company 68 9-20 tons of steamer lump coal, and 30 14-20 tons of stove coal, all of which was delivered to them at Newburgh, New York, being there shipped on board the schooner Franklin, bound for Bridgeport, Connecticut, to be thence transported by the plaintiffs' railroad to West Winsted, the place of business of the defendants. The master of the schooner, on receiving the coal on board at Newburgh, executed a bill of lading as follows:—"Received of the Pennsylvania Coal Company, on board the schooner ' Franklin,' whereof I am master, 68 9-20 tons steamer coal, and 30 14-20 tons stove coal, of which about 22 tons on deck, which I promise to deliver to the Naugatuck railroad or order, at Bridgeport, Conn., they paying freight for the same at the rate of $2 per gross ton; on account of Beardsley Scythe Company, West Winsted, Ct. Dangers of the sea excepted. Newburgh, Oct. 28th, 1865. Edward H. Smith." On the 6th of November, 1865, the plaintiffs received from the master of the schooner a quantity of coal on account of the defendants, and paid to the master for freight of the same from Newburgh to Bridgeport $198.30, being $2 per ton for 99 3-20 tons, the plaintiffs not weighing the coal before paying the freight or at any time, but relying upon the bill of lading in regard to the quantity. At the time of paying the freight the plaintiffs drew on the defendants at sight for the amount, and the defendants paid the draft on presentation. All the coal which the plaintiffs received in fact was duly transported on their cars from Bridgeport to West Winsted. On its arrival there the stove size coal was weighed, and found to fall short of the quantity called for by the bill of lading by 6 tons and 1,326 pounds. The steamer coal was not weighed at West Winsted. The custom of the plaintiffs and of railroad companies generally

is, not to weigh cargoes of coal received from vessels for transportation over their roads except when directed to do so by the shipper or consignee, the shipper or consignee paying the expense of weighing, (which was not the fact or direction in this case,) but it is the custom of such railroad companies to receive and pay the freight of goods and merchandise received for transmission from vessels according to their bill of lading, and the plaintiffs had often transported coal for the defendants before just as they did in this instance. The defendants were aware of this custom, but supposed that the quantity of a cargo of coal could with the exercise of ordinary care be very nearly ascertained by the plaintiffs by the appearance of the coal when loaded. The stove size coal, if there had been 30 14-20 tons of it, as called for by the bill of lading, would have filled three cars, whereas in fact it filled but two cars and about two-fifths of another. The plaintiffs at the time of loading the coal on their cars knew the capacity of the cars, and might without weighing have discovered upon observation, by the exercise of ordinary care, a falling short of the quantity of the stove size coal from the quantity called for by the bill of lading.

Upon the foreging facts, the parties request the court to decide—1. Whether the plaintiffs are entitled to the full amount of freight paid by them to the master of the schooner, or whether the defendants are entitled to a deduction of the freight upon the coal which was deficient upon the arrival of the cargo at Bridgeport, and which it is agreed is $13.32. 2. Whether the defendants are entitled to deduct also the value of the missing coal, which it is agreed amounts to $88.66.

The case was reserved by the superior court for the advice of this court.

*Beardsley* and *Sumner*, for the plaintiffs.

*W. K. Peck*, for the defendants.

HINMAN, C. J. The case is this. A cargo of coal was ship-

ped at Newburgh, to be transported by schooner to Bridge-port, and from thence to be forwarded by the plaintiffs' railroad to the defendants at West Winsted. The plaintiffs on receiving the coal at Bridgeport paid the schooner's freight and drew on the defendants for the amount, which the defendants accepted and paid. The plaintiffs transported all the coal which they received from the schooner; but it appears that the quantity when it came to the defendants' hands was some six tons less than the quantity which appears by the bill of lading to have been shipped at Newburgh, and the defendants now claim that the plaintiffs should pay for the deficiency, and also should repay the small sum overpaid the schooner for the carriage of it; or, what amounts to the same thing, that these two sums should be deducted from the account of the plaintiffs for other charges which it is admitted the plaintiffs have against the defendants. The claim of the defendants is, that it was the duty of the plaintiffs to weigh the coal, or to take some other mode of ascertaining that the quantity received by them corresponded with the quantity mentioned in the bill of lading, before paying the schooner's charges for freight. But we know of no rule of law requiring this, and it conflicts directly with the custom of carriers of this description, as one of the facts in the case is that it is the custom of the plaintiffs and of railroad companies generally not to weigh cargoes of coal received from vessels for transportation over their roads, except when directed to do so by the shipper or consignee, he paying the expense of such weighing. The plaintiffs then in this instance acted in the usual and accustomed manner, and it is obvious that a different custom would be very burdensome upon intermediate carriers, since the expense and delay caused by such weighing at the end of every link in a long route might be so burdensome as to render the business impracticable. It appears to us therefore that the plaintiffs, in transacting this business according to the established custom, did all that the law required of them. As common carriers they were bound to receive and forward the coal to its destination. They of course could not obtain it without paying freight to the car-

rier of whom they received it. The defendants knew this when they directed the coal to be sent by this route. They must have known of the custom also not to weigh, since it appears that they had previously received goods in the same way. And this surely is tantamount to a request of the plaintiffs to transport the goods in the usual mode. The defendants therefore should look to the carrier whose negligence caused the deficiency. Their remedy against him seems ample, unless indeed there was some mistake in the bill of lading, in which case they ought to have no remedy except for the small sum overpaid for freight. In respect to this the plaintiffs may be regarded as paying it at the defendants' request, and therefore would be entitled to recover it if it was still unpaid. It was paid too by the plaintiffs in the regular course of business, and the defendants having paid it to the plaintiffs, and it being equitable for them to retain it, the defendants ought not to be permitted to recover it back.

We advise judgment for the plaintiffs for the full amount of their claim.

In this opinion the other judges concurred.