LAUGHLIN and another vs. THE CHICAGO AND NORTHWEST-
ERN RAILWAY COMPANY.

*Common Carrier of Goods — Last of several Carriers — Loss of Goods —
Presumption.*

1. Upon proof of the existence of a certain state of facts at a certain time, in respect to the condition of goods, the jury may presume that the same continued up to the time when the evidence shows a different state of facts to have existed.
2. Thus where goods in a box were shipped by three successive carriers, and when delivered to the consignee (although there were no external indications of the fact) the box was found to have been opened, and certain goods abstracted therefrom, the jury may presume, in the absence of evidence to the contrary, that the box remained unopened until it came into the possession of the *last* carrier, and that the loss occurred through its fault.

APPEAL from the Circuit Court for *Dodge* County.

The facts upon which the plaintiffs sought to recover in this action will appear from the opinion. A motion by defendant for a nonsuit was denied; and a verdict having been found for the plaintiffs, a new trial was also denied, and judgment rendered on the verdict; from which defendant appealed.

*Mayham & Perkins,* for appellant, denied that there was any evidence in this case upon which the verdict could be sustained; and as to the case of *Smith v. N. Y. Central R. R. Co.,* relied upon by the plaintiffs, contended that the opinion of Mr. Justice DANIELS showed the existence of a state of facts in that case, entirely unlike anything in this, from which the jury might well have inferred that the injury sued upon occurred while the goods

were in the possession of the last carrier, the defendant in that action.

*James Coleman*, for respondent, cited *Smith v. N. Y. Central R. R. Co.*, 43 Barb., 225, affirmed by the Court of Appeals (Appendix to 38 How. Pr. R., 666); *Sleeper v. Van Middlesworth*, 4 Denio, 431, and authorities there cited; and the reference to the same in *People v. Snyder*, 41 N. Y., 397.

DIXON, C. J. The amount pecuniarily involved in this case is small and trifling, but the principle is important and not by any means free from doubt or difficulty. The plaintiffs, as consignees and owners, residing at Fond du Lac, in this state, sue to recover the value of four pieces, about 100 yards, of cloth, which, with a considerable quantity of other cloths, making in all three boxes, marked and addressed to them at that place, were consigned by Messrs. Allen, Grandin & Co., of Jamestown, New York. The cloths were purchased by the plaintiffs of the consignors in Jamestown, and delivered by the latter at that place to the Atlantic and Great Western Railway Company for transportation, and a receipt taken. The plaintiff *Carey* testifies to an understanding, but it is not shown with whom, that the goods were to be carried by the Atlantic and Great Western Railway to Mansfield, Ohio; by the Pittsburgh and Fort Wayne Railroad to Chicago, and by the Chicago and Northwestern Railway to Fond du Lac. The shipping receipt, however, by which the Atlantic and Great Western agreed to carry only to Mansfield, specifies no route beyond that place. Those railways, in the order and at and between the places named, constitute connecting and continuous lines of railroad communication from Jamestown to Fond du Lac, and by those lines the boxes in question were in fact transported, and in proper time delivered by the defendant, the *Chicago and Northwestern Railway Company*, to the plaintiffs, at Fond du Lac, in apparent good order. The plaintiffs received the boxes and paid the freight and charges; but when the

boxes were opened, it was ascertained that the four pieces of cloth were missing. The boxes, at the time the defendant delivered and the plaintiffs received them, did not appear to have been broken open or disturbed. There were no external or visible signs or marks of the breaking, though, upon opening them at the store of the plaintiffs, it was observed that the nails and fastenings of one of them gave way much more easily than those of the others, and the cloths in that box were displaced and deranged, and some pieces appeared to be gone. Of the condition of the boxes when they came to the possession of the defendant at Chicago, no evidence was given; but the presumption must be, as to all outward appearances at least, that it was the same as when delivery was made at Fond du Lac. Proof that the four pieces of cloth were in the boxes when they were delivered to the railway company at Jamestown, was clearly and positively made. The boxes, or one of them, had been opened, and the pieces of cloth taken or stolen, somewhere between Jamestown and Fond du Lac; but at what place, or what particular time, or by whom, the proofs give not the slightest indication. Upon this state of facts or evidence given by the plaintiffs, the defendant moved a nonsuit, which was refused by the court, and the cause submitted to the jury, who returned a verdict against the defendant for one hundred dollars. The defendant afterwards moved for a new trial, which motion was denied, and judgement was entered in favor of plaintiffs, from which this appeal is taken.

Upon this record a very interesting, and to my mind doubtful, question arises, as to whether any, and, if so, what presumption is to be indulged against the *Chicago and Northwestern Company*, so as to charge that company with liability for the loss. It is manifest that the recovery against it cannot be sustained without the aid of presumption of some kind. To maintain their action the plaintiffs must show, either by direct evidence of the facts themselves or by legitimate and proper inference from other facts proved, *first*, that the cloths which are the

subject of suit were in the custody of the defendant, as a common carrier, for transportation over its road ; and *secondly*, that while so in the custody of the defendant they were lost. These two facts, either by direct proof or by legal and proper inference or presumption, must have been established, or the verdict cannot be sustained. The direct proof is wholly wanting. No one knows, or can say with any certainty whatever, that the cloths ever came to the possession of the defendant at all. The most that can be said, as a mere natural inference from the facts proved, is, that they *might* have come to its possession, and so have been lost or stolen while in its custody. As a mere natural inference or presumption of fact to be drawn or indulged by the jury, it is the slightest and weakest possible, if indeed there exists any foundation for it. And I do not see that there is any foundation according to Mr. Starkie's definition of natural presumptions, or presumptions of *mere fact.* If there be a presumption, therefore, upon which the defendant is to be held liable, it must be of the second class spoken of by that learned author, namely, " *legal* presumptions made by a jury, or presumptions of *law and fact.*" *Welch v. Sackett,* 12 Wis., 257 ; *Graves v. The State,* id., 593.

Does such legal presumption exist in this case? The presumption claimed and relied upon is, that a particular state of things being once proved, that state is presumed to have continued until the contrary is established by evidence either direct or presumptive. The position is, that the cloths being proved to have been in the boxes at the time of their delivery to the Atlantic & Great Western Railway Company, the presumption of law is, that they continued therein until the boxes came to the possession of the defendant, unless the contrary be shown, the burden of which rests upon the defendant. The existence of a presumption of this kind in certain cases is not denied, but the point is upon its applicability here. If the plaintiffs had brought their suit against the Atlantic & Great Western Company, could that company have escaped liability on the ground

of such presumption? And so, if the Pittsburg & Fort Wayne Company had been sued, could it have avoided responsibility on the same ground? Could both these companies have exonerated themselves and imposed liability for the loss exclusively upon the defendant, when there was no more evidence of the loss having occurred while the boxes were in the custody of the defendant than when in the custody of either of themselves? If those companies could have done so, then it must have been upon some technical application of the doctrine of presumption—upon a presumption which is artificial rather than natural, and is raised and sanctioned by the law from motives of necessity or policy, to give certainty to the remedy and prevent a failure of justice in such cases.

As the common carrier next in order, the defendant was bound to receive and transport the boxes when tendered. It was bound to receive them in the condition in which they were. It had no means of investigation or inquiry into their contents. It had no right to open the boxes or examine what they contained, and if it had, could not have detected the loss by such examination, and so have refused to receive and carry. It must take the boxes as they were, with no external signs or appearances of breaking or injury, and nothing to give warning that the cloths had been previously abstracted or removed, and carry them forward to their place of destination. Under these circumstances, the rule or presumption of law which makes the defendant liable for the value of the goods, unless (what seems quite impossible to be done) it shows where the loss actually took place, must be supported by most clear and satisfactory reasons of policy or necessity, or otherwise it should be rejected. It must be shown that greater injustice or more certain injustice will ensue from its rejection, than will or may follow from its adoption. I have been, as I have said, in very considerable doubt; but examination convinces me that there are such reasons, and that both principle and authority sustain the presumption. The very uncertainty which exists as to when or where the

cloths were taken out, or in whose custody the boxes then were, and the difficulty or impossibility of ever ascertaining those facts, make the presumption absolutely necessary. What is difficult or impossible for the defendant to find out with respect to the breaking and larceny, is still more difficult or impossible for the plaintiffs. The defendant possesses means and facilities which the plaintiffs do not. To say that the plaintiffs shall not recover because they have not ascertained and proved that the clothes were taken while the boxes were in the custody of the defendant, is, in effect, to say that they are without remedy in the law for their loss. If required to make such proof to establish a cause of action against this company, then the same proof would be required in a suit against either of the others, and the plaintiffs could not recover against any, although it is certain that one of them is or should be responsible for the loss. If the plaintiffs knew or could prove in whose custody the boxes were when the cloths were taken, there would be no hardship, perhaps, in requiring them to sue that company. But the plaintiffs do not know, nor is it possible for them to ascertain this, and, unless aided by presumption, they are without remedy, which is a positive and certain injustice. I know of no more reasonable or proper presumption to apply than that here invoked. In fact, I know of no other fitted to the facts and circumstances of the case. It is true, the defendant may not be the company which ought in very fact to be visited with the consequences of the loss, but it is at the same time true that it *may* be such company. The cloths may have been taken while the boxes were in its custody. It is not certain that they were not, and therefore not certain that injustice has been done the defendant. On the other hand the wrong and injustice done the plaintiffs, if they are dismissed without remedy, are certain. They are no matter of doubt or speculation. If there were no redress in such case, it could no longer be the boast of our law that there is no wrong without its remedy, and the strict liability of common carriers, whenever two or more are

associated in the transportation or connected in the line or route, would be at an end. It would be far more in harmony with the rules of the common law respecting such liability, that any or all of the carriers so associated, or whose lines or routes connect and who have had possession of the goods, should be held liable, at the option of the owner or consignee in such case, than that none of them should be. And the reasons for adhering to those rules of the common law probably exist at the present day quite as much as ever; and by some they are thought to be even more cogent. The difficulties, nay even impossibilities, by which owners would be beset if put to the task of ascertaining where their packages or boxes were broken open and contents plundered when in transit over our long routes, are well known, and are illustrated by the facts of this case. They are also portrayed by Chief Justice PERLEY, in *Lock Co. v. Railroad Co.* (Sup. Ct. N. H.), 10 Am. Law Reg., N. S., 260, 263; by WAITE, C. J., in *Elmore v. The Naugatuck Railroad Company*, 23 Conn., 482; and by SMITH, J., in *McDonald v. Western Railroad Corporation*, 34 N. Y., 501, 502. In the first named case, the chief justice says: "Any rule which should have the effect to defeat or embarrass the owner's remedy, would be in direct conflict with the principles and whole policy of the common law." I am of the same opinion. I think this is no time to relax the stringent and wholesome rules of the common law, and must hold that the doctrine of presumption was rightly applied by the court below in aid of the plaintiffs in this case.

There is a most singular absence of reported cases bearing upon the question of presumption here considered. One would suppose that cases of the kind must frequently have arisen, but only one directly in point has been cited, and I know of no other. It is *Smith v. New York Central Railroad Company*, 43 Barb., 225. The decision was affirmed in the Court of Appeals at the December Term, 1869; but the case in that court is unreported. See *Index* " *Unreported Cases*," 41 N. Y., 620. We have been favored, however, with manuscript copies of the

Laughlin and another vs. The Chicago and Northwestern Railway Co.

opinions of the judges, DANIELS and GROVER, and that of the latter is printed at length in the brief of counsel for the plaintiffs. The reasons for applying the presumption, that the condition of a thing once proved is presumed to continue until the contrary is shown, to a case of this kind, are well stated by JOHNSON, J., in 43 Barb., 228, 229.

And the case of *Brintnall v. S. & W. R. R. Co.*, 32 Vt., 665, presented a somewhat similar question. A box of goods, marked and directed to the plaintiff at Boston, was delivered by the plaintiff's agent to the defendant at Saratoga Springs, to be transported by the defendant over its road on the way to Boston. Castleton was the terminus of the defendant's road toward Boston, where it connected with another road in the line of communication in that direction. In an action on the case for negligence as a common carrier and not delivering the box of goods to the next carrier, and to recover damages for its loss, it was held sufficient, *prima facie*, to establish a right of recovery on the part of the plaintiff, to show the delivery of the box to the defendant, and that it had not arrived at Boston, and was lost. The court say : " The argument is, that showing the box did not arrive at Boston, the end of the route, but was lost, does not prove or tend to prove the defendant did not deliver it to the next carrier, because it might have been lost between Castleton and Boston. It must be admitted it is very inconclusive proof of the fact, but still we think it has some tendency to establish it. The box is proved into the hands of the defendant ; there is no evidence that anybody else ever had it, or that it was ever in the possession of any other carrier in the line. The usual and ordinary course of things, what is always expected, and what generally proves true, is, that goods forwarded upon such a line arrive at their destination ; and therefore the fact that goods do not arrive at one end of the line, is some evidence that they were not sent from the other. It may be said that this reasoning would include the defendant's road as well as the rest of the carriers in the line, but the

· defendant is proved to have had the box, while there is no proof that either of the others ever did. *But we place the case mainly upon the ground that this was really all the proof the nature of the case permitted to the plaintiff,* and that proof of a delivery by the defendant to the next carrier was a matter that was peculiarly within the power of the defendant, and not at all in the power of the plaintiff, unless the defendant and the connecting roads preserved evidence of the transfers of all freight from one road to the other." And in another place the court say : "*But in such cases a plaintiff is only bound to give such proof of the loss as the nature of the case admits of and fairly is in his power to bring.*" The facts of that case differed materially from the present, but the reasoning of the court applies with much force here. See also *Tarbox v. Eastern Steamboat Co.,* 50 Maine, 339 ; and *Hastings v. Pepper,* 11 Pick., 41.

In *Naugatuck R. R. Co. v. Beardsly Scythe Co.,* 33 Conn., 218, it was held, under the peculiar circumstances. of the case, that the consignee should look to the carrier whose negligence caused the deficiency, rather than the last carrier who delivered the goods.

On the whole, I am of opinion that the judgment of the circuit court was right and should be affirmed.

*By the Court.*— Judgment affirmed