Paramore *vs.* The Western Railroad Company.

---

W. E. PARAMORE, plaintiff in error, *vs.* THE WESTERN RAILROAD COMPANY, defendant in error.

Where a railroad, which is the last of a connecting line, receives, for the purpose of completing the transportation, cars loaded with hogs, which were so crowded that some of them were suffocated when they reached the point of destination, such road becomes responsible to the owner of the hogs for their delivery, and the burden is on it to show whether the suffocation occurred before or after its reception of such cars.

Railroads. Before Judge JAMES JOHNSON. Muscogee Superior Court. November Term, 1873.

Suit was instituted by Paramore in the justice court of the seven hundred and seventy-third district against the Western

Railroad Company for $89 28, damages done to a lot of hogs in the transportation of the same to the city of Columbus. The case was carried by appeal to the superior court. The evidence presented the following facts :

The hogs were shipped from the town of Normandy, in the state of Tennessee, to the plaintiff, at the city of Columbus, in the state of Georgia. Fifty-two were placed in one car and fifty-one in another. They arrived at the city of Atlanta in good condition. They were then changed to the cars of the Atlanta and West Point Railroad Company, which were too small and close. They were conveyed in these cars without examination, to Columbus, where several were found to be dead. The witnesses believed that this resulted from their being too closely confined. There was no proof of any formal receipt for the hogs having been given by the defendant to the Atlanta and West Point Railroad Company. The evidence simply showed that a through bill of lading from Normandy, Tennessee, to Columbus, Georgia, was given; that the cars upon which the hogs were placed at Atlanta went through to Columbus, being transferred from the Atlanta and West Point Railroad Company to the defendant at West Point. The value of the hogs was also proven.

The jury found for the defendant. The plaintiff moved for a new trial upon the following grounds, to-wit :

1st. Because the court erred in charging the jury as follows : "This defendant, if it be a road of a connecting line, is liable for the loss, if it has been shown that it was the last of the line, and gave a receipt for the hogs as in good order. It will also be liable if it be the last of a connecting line receiving them from the Atlanta and West Point Railroad Company in such a condition as to entitle the Atlanta and West Point Road to such a receipt from the defendant. The jury will determine whether such a receipt was given, or whether the Atlanta and West Point Road was in such a condition as to the hogs as to entitle the Atlanta and West Point Road to have such a receipt given; if so, the defend-

Paramore *vs.* The Western Railroad Company.

ant is liable for the loss. But if no such receipt was given, and if the Atlanta and West Point Road was not in a condition rightfully to demand such a receipt, you will then inquire and determine upon what road the loss occurred, and if it should appear from the testimony that the loss occurred from the neglect of the Atlanta and West Point Road, then such road is liable for the loss and not the defendant."

2d. Because the court erred in charging the jury as follows: "If the hogs were crowded together in improper cars by the Atlanta and West Point Road, and thereby the hogs were suffocated, then said suffocation is the act of said Atlanta and West Point Road, and such road is liable to the plaintiff for the loss and not the defendant, although the hogs died after they were received by the defendant, and while they were upon defendant's road."

3d. Because the verdict was contrary to the evidence.

The motion was overruled and the plaintiff excepted.

PEABODY & BRANNON, for plaintiff in error.

J. F. POU, for defendant.

TRIPPE, Judge.

There is no proof as to what time the hogs died from suffocation. It is stated by the witnesses that they were placed on the Atlanta and West Point Railroad in cars which were too small and close, and that they were received in the same cars by the defendant, and carried in them without examination to Columbus, where several were found to be dead, and it was thought that this resulted from their being too closely confined. Now, if the hogs had been suffocated whilst they were being transported by the Atlanta and West Point Railroad, then it would not only have appeared who committed the first default, but that whilst committing it the damage had resulted. And if this defendant had proved such to be the fact, then the liability might have been exclusively fixed on the West Point Road. But it does not so appear. It is

in proof, however, that the defendant received the hogs so crowded in cars that it was dangerous to carry them. This receiving was an act of the defendant. To attempt to transport the hogs so confined was a wrong on its part, a breach of its duty as a carrier. Can a carrier, who is one of a connecting line of carriers, relieve himself from liability by saying that he received the goods from a preceding carrier, so packed in the car or vehicle in which he himself is going to carry them, that they were obliged to be injured in the transportation? If the goods themselves are not in good order, have been already injured, that is one thing; but the loading or packing them in the cars so that it may produce damage is quite another and different matter. The carrier has full control over this. If the last carrier who receives them finds that they are not in good order, that damage has already occurred, he can protect himself. It might be his duty to receive them in such order and to deliver them—that is, he may be compelled to receive even damaged goods—but he is not bound to receive them when they are so badly packed that they cannot be removed without loss : *Breed vs. Mitchell,* 48 *Georgia,* 533. So the defendant was not bound to receive these cars from the Atlanta and West Point Railroad with the hogs so crowded that they were in danger from suffocation. If it did, it made the act of that road its own act, and was bound for the damages resulting from it. And the burden is on it to show whether the suffocation occurred before or after its receipt of such cars. Section 2084 of the Code says that where there are several connecting railroads under different companies, and the goods are intended to be transported over more than one railroad, each company shall be responsible only to its own terminus and until delivery to the connecting road; the last company which has received the goods "as in good order" shall be responsible to the consignee for any damage, open or concealed, done to the goods, and such companies shall settle amongst themselves the question of ultimate liability. The "good order" mentioned in this section hardly means the manner in which goods are

packed or stowed in the car. As stated before, if the goods themselves be in bad order or be damaged, the last road, or indeed any road, can so specify in its receipt and be protected. But if it were to say in its receipt that it received cars from another road loaded with live hogs, full packed one above the other, it would not be entitled to claim that the road so crowding them was alone responsible for all damages. Such last road should either demand that the manner of the loading be changed and other cars added, or should do so itself. It not only would not be bound to receive and ship cars so packed, but it would be its duty either to refuse or to have the proper changes made. If, then, a carrier can protect himself against liability for the receipt of goods in bad order—in an unmerchantable condition—or not so prepared for transportation by the shipper as to be safely carried, and also has full control over the manner in which they shall be put aboard his carriages, or those which he makes his own by receiving and adopting them, he should not have the right to set up in his defense that another has acted wrong, when by his continuance of that wrongful act damage has probably ensued. At least the burden is on him of showing that it was not by his default or his own negligence, thus proved, that the injury was caused.

Judgment reversed.