## WAY v. SOUTHERN RAILWAY COMPANY.

1. Where several articles of household furniture, included in a single shipment and covered by one bill of lading, which mentioned them in detail, were delivered in good order to the first of a connecting line of common carriers, for transportation over the entire line, and where the last of the connecting carriers delivered some of the articles to the consignee, but not all of them, in a suit by the consignee against the final carrier, based on its common-law liability, upon proof of such facts and of the value of the articles lost, he made out a prima facie case, and shifted the onus to the defendant to show that it did not receive the lost articles, or otherwise was not liable for the loss; and it was error to direct a verdict for the defendant.

2. If in such a case the plaintiff was not entitled to recover for articles of clothing claimed to have been packed in a washstand and dresser which formed a part of the shipment and were lost, this would not authorize the direction, by the court, of a verdict for the defendant, denying any right to recover for the lost furniture.

Argued January 13,—Decided June 17, 1909.

Action for damages.    Before Judge Charlton.    Chatham superior court.    April 17, 1908.

Way brought suit against the Southern Railway Company for the loss of certain personal property. The evidence for the plaintiff showed the following facts: Through an agent he caused certain household furniture and personal chattels to be shipped from Watertown, New York, to Savannah, Georgia, consigned to himself. The initial carrier was the New York Central & Hudson River Railroad Company. The final carrier in the line of transportation was the defendant. The first-mentioned company issued a bill of lading acknowledging the receipt of the goods, of which an itemized statement was given, consisting of two bed-ends, two bed-rails, one washstand, one dresser, and other named articles. The weight was given in bulk as 1625 pounds. The plaintiff was named as the consignee, and the place of destination as

Savannah, Georgia. It stated that the initial carrier had received the property in apparent good order, "consigned and destined as indicated below, which said company agrees to carry to said destination if on its road, otherwise to deliver to another carrier on the route to said destination." One of the conditions printed on the back of the bill of lading was that no carrier should be liable for loss or damage not occurring on its own road or its portion of the through route. At Savannah some of the articles included in the shipment were delivered to the consignee, but others were not. On application by the plaintiff to the delivery clerk of the defendant at Savannah, the latter told him that the goods had been lost in transit; that they would probably turn up, and, if not, that the plaintiff should file his claim with the defendant. The plaintiff then saw the claim clerk, who said he would investigate the matter. The lost goods were never received by the plaintiff. Evidence was introduced as to their value, and that the articles shipped were in good condition when delivered to the first carrier. Among the articles for the loss of which suit was brought was certain wearing apparel, which the plaintiff claimed was packed in the dresser and washstand which were lost. The defendant introduced its agent as a witness, who testified that as between household goods, such as furniture, and such goods as clothes, the higher freight rate was on clothing, and that "freight from Watertown, New York, is subject to the Southern classification." It also introduced a decision reported in 51 N. Y. 166, on the subject of limiting the common-law liability of a carrier, and the valuation of the property shipped, by stipulation in a receipt given by the carrier for the freight.

Upon the close of the evidence, the presiding judge directed a verdict for the defendant. The plaintiff moved for a new trial, which was refused, and he excepted.

*Saussy & Saussy,* for plaintiff.

*Osborne & Lawrence,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.)

The controlling question is whether the plaintiff made out such a case as required its submission to the jury, or whether the presiding judge was authorized to direct a verdict. The plaintiff showed a shipment of household goods consisting of various articles mentioned, covered by a single bill of lading, and of which

the weight was stated in bulk. They were received at Watertown, New York, by the New York Central & Hudson River Railroad Company, in good order. The shipment was to be carried to Savannah, Georgia, and delivered to the plaintiff. Sometime later at Savannah the Southern Railway Company, the last carrier in the line, delivered a portion of the articles included in the shipment to him. The defendant's delivery clerk informed the plaintiff that the goods which were not delivered had been lost in transit; that they would probably "turn up;" and that if they did not do so, the plaintiff should file a claim with the defendant company. The plaintiff never received the lost goods. This suit was not brought on an express contract or based on the Civil Code of 1895, §2298, but upon the common-law liability of the defendant as a common carrier.

1. It is well established that where personal property is delivered in good order to the first of a connecting line of common carriers for transportation, and the last connecting carrier delivers it to the consignee in a damaged condition, such final carrier may be held liable in an action for the damage, without other proof that such damage was occasioned by his fault, unless he can show that he received the property in the condition in which he delivered it, or that the damage was caused by the act of God or the public enemy. In reference to some kinds of property also it has been held that proof that the damage arose from its inherent qualities, and without negligence on the part of the carrier, might furnish a defense. In such a suit against the final carrier, it is not incumbent on the plaintiff as a part of his case to show by direct evidence that the property was delivered to the final carrier in good order; but the burden is on the defendant to show that it was not responsible for the damaged condition at the time of delivery. *Forrester* v. *Georgia Railroad Co.*, 92 *Ga.* 699 (19 S. E. 811); *Bell* v. *Western & Atlantic R. Co.*, 125 *Ga.* 510, 513 (54 S. E. 532). In the decisions of various courts three different reasons have been assigned for this ruling: (1) the presumption of continuity of condition once shown, by virtue of which, upon proof of delivery in good order to the first carrier, the property would be presumed or inferred to continue in the same condition until the contrary was shown. This has been applied even to such articles as cabbages and melons, as will ap-

pear from the cases above cited. (2) That a carrier is not obliged to receive goods in such a damaged condition as to be unfit for shipment, or, if it must receive them from a preceding carrier in a damaged condition, it does not have to receive them as in good order, but may receive them specially as in bad order; and that if it does receive and deliver them, in the absence of any proof that they were not received as in good order, it may be presumed that they were so received. *Breed* v. *Mitchell,* 48 *Ga.* 536; *Paramore* v. *Western R. Co.,* 53 *Ga.* 383, 386. (3) That when the shipper resigns his property into the custody of the initial carrier, it becomes practically impossible for him to watch it at all points during the progress of transportation over the connecting lines, or to know just where the damage was done, or in the custody of which carrier the property was at the time; that the condition in which each carrier received it lies peculiarly within such carrier's knowledge, and not that of the shipper, and the proof of such fact is peculiarly in the power of the carrier; and therefore, when the last carrier delivers the property in a damaged condition, and is called on to answer for having done so, the burden is on such carrier to show that it was not responsible for the damage. Sometimes one of these grounds has been advanced as a basis of a decision, sometimes more than one. They often merge into each other. Thus the statement in the second ground, that the burden is on the carrier because he might protect himself by expressly receiving the goods as not in good order, involves also the third proposition that it is peculiarly within his knowledge as to whether he did in fact receive the goods as in good order, or as in bad order.

In Smith *v.* New York Central R. Co., 43 Barb. (N. Y.) 225, it was said broadly that "The owner of goods, suing a common carrier to recover damages for an injury happening to the goods through negligence, must give evidence sufficient to show that the goods were in good condition when they came to the possession of the defendant, as a part of the evidence that they have been injured while in his custody." But, in deciding what would be sufficient evidence for that purpose, it was held, that, "Where property is delivered to a railroad company, to be transported by that and another company over their respective roads to its place of destination, it is enough for the owner, in an action

against the company delivering the property, to recover damages for negligence, to show that he delivered the property to the first company in good order; and the burden is then cast upon the company delivering the goods thus injured, of proving that they were not injured while in its possession, or that they came to its possession thus injured." In the opinion Johnson, J., said: "The general rule is, that things once proved to have existed in a particular state are to be presumed to have continued in that state until the contrary is established by evidence, either direct or presumptive. . . Unless this rule is to be applied to goods delivered, to be transported over several connecting railroads, there would be no safety to the owner. It would often be impossible for him to prove at what point, or in the hands of which company, the injury happened. . . The general rule undoubtedly is, that the burthen of proof is always upon the party who asserts the existence of any fact which infers legal responsibility. But the exception is equally well established, that in every case the onus probandi lies on the party who is interested to support his case by a particular fact which lies more particularly within his knowledge, or of which he must be supposed to be cognizant."

Counsel for the defendant do not controvert the rule that proof of delivery of property in good order to the initial carrier for shipment, and of delivery of it by the final carrier in a damaged condition, will suffice to shift the burden of proof to the defendant, when the last carrier is sued; but they deny that this rule is applicable to a case like the present one, where separate articles were included in the shipment, and only some of them were delivered by the final carrier. The authorities have not drawn any distinction, as to this rule, between damage and partial loss; and the reasons on which the ruling as to delivery of property by the final carrier in a damaged condition rests, taken as a whole, warrant a like ruling as to partial loss of a shipment. In *Susong* v. *Florida Central &c. R. Co.*, 115 *Ga.* 361 (41 S. E. 566), suit was brought against the final carrier of a car-load of stock, and the evidence showed that on delivery one horse was missing, and one was injured. The case as to both was treated as resting on the same basis; but the jury found for the defendant, and it was held that there was sufficient evidence to show that the loss and damage did not occur on the line of the last railroad company, and

that it was not liable therefor. In the opinion Mr. Justice Cobb said: "The defendant company having received the car-load of horses from the Southern Railway Company at Columbia without exception, there was a presumption that they were received as in good order, and so long as this presumption prevailed the onus was upon the defendant to account for the horse which was missing when the car arrived at Savannah, and to explain the injuries to the horse which was then in a damaged condition." And so other authorities treat damage and partial loss before delivery as governed by like principles. In 3 Hutchinson on Carriers (3d ed.), §1348, it is said: "But a connecting carrier, who has completed the transportation and delivered the goods to the consignee in a damaged condition or deficient in quantity, will be held liable in an action for the damage or deficiency, without proof that it was occasioned by his fault, unless he can show that he received them in the condition in which he has delivered them. . . And the presumption which applies to the last of a line of connecting carriers, that the goods were delivered to it in the same condition as they were delivered to the first carrier, applies also to any intermediate carrier in whose possession the goods have been found in a damaged condition." In Savannah, Florida & Western Ry. Co. *v.* Harris, 26 Fla. 148 (7 So. 544, 23 Am. St. R. 551), it was held that where goods are transported by connecting carriers, and some of them are lost or injured, and the last carrier is sued therefor, it will be held liable in the absence of proof that the loss or injury occurred on some preceding line, on the presumption that the goods were delivered to it in the same condition in which they were delivered to the first carrier. In the opinion of Maxwell, J., a number of authorities on the subject were cited and discussed. He said: "The reason of the rule of evidence is founded upon the better means the connecting carriers have to ascertain where the loss occurred." In that case the shipment was of a car-load of household goods and building material, some of which were lost and others damaged. The railroad sued was not in fact the final carrier, but was the last railroad company, which delivered the shipment to a boat line for transportation to the destination. In Laughlin *v.* Chicago & Northwestern Ry. Co., 28 Wis. 204 (9 Am. R. 493), a considerable quantity of cloth was shipped in three boxes, and trans-

ported by successive carriers. When delivered it was found that four pieces of cloth were missing. In a suit brought against the last carrier, it was held that the presumption was that the loss, occurred through the fault of the defendant, and the burden of exculpating itself was shifted to it. In the opinion Dixon, C. J., said: "If the plaintiffs knew or could prove in whose custody the boxes were when the cloths were taken, there would be no, hardship, perhaps, in requiring them to sue that company. But the plaintiffs do not know, nor is it possible for them to ascertain. this, and, unless aided by presumption, they are without remedy, which is a positive and certain injustice. . . The cloths may have been taken while the boxes were in its custody. It is not. certain that they were not, and therefore not certain that injustice has been done the defendant. On the other hand the wrong and injustice done the plaintiffs, if they are dismissed without. remedy, are certain. They are no matter of doubt or speculation. If there were no redress in such case, it could no longer be the. boast of our law that there is no wrong without its remedy, and. the strict liability of common carriers, whenever two or more are associated in the transportation or connected in the line of route,. would be at an end." In Gwyn Harper Mfg. Co. *v.* Carolina Central Railroad, 128 N. C. 280 (38 S. E. 894, 83 Am. St. 675), a large. amount of flour was shipped under one bill of lading, and all of it. was delivered except twenty bags, which were lost. In the opinion Douglas, J., said: "This court has repeatedly held that 'among connecting lines of common carriers, that one in whose hands: goods are found damaged is presumed to have caused the damage, and the burden is upon it to rebut the presumption. . . We think that the same rule holds good where only a part of the shipment is lost; because that is the nature of the damage to the. shipment, and the carrier in whose hands the remainder is found is fully as able to protect itself as it would be in the case of' breakage or other damage. Whether this rule would apply where no part of the shipment is found in anybody's hands may be a. different question." In *Atlanta & West Point R. Co.* v. *Broome,*. 3 *Ga. App.* 644 (60 S. E. 355), the suit was for shortages in several shipments of coal. It was shown, that the plaintiff delivered. the cars of coal to the initial carrier, that the final carrier· re-. ceived the cars, collected the freight, and effectuated. delivery to,

the consignee, but that when delivered there was a shortage in the amount of the coal. The same principle was applied. See also Southern Express Co. *v.* Hess, 53 Ala. 19; Adams Express Co. *v.* Walker, 119 Ky. 121 (83 S. W. 106, 67 L. R. A. 412) ; Elmore *v.* Naugatuck R. Co., 23 Conn. 482 (63 Am. D. 143). The case of *Southern Ry. Co.* v. *Allison,* 115 *Ga.* 635 (42 S. E. 15), does not conflict with the ruling now made. There suit was brought against the railway company for the loss of two bales of cotton alleged to have been delivered to it. The evidence showed that the plaintiff had a lot of cotton in his yard about one hundred yards from the defendant's depot, and it was sought to prove that forty-five bales had been delivered to the defendant for transportation. All were transported and delivered except two bales, but the evidence failed to show that they were ever placed in the custody of the carrier at all. It was not a case of successive common carriers, but of a failure to prove any shipment of the two bales. Nor does this ruling conflict with that in *Cohen & Hargrove* v. *Rome R. Co.,* 45 *Ga.* 293. In that case suit was brought for the non-delivery of certain goods which were alleged to have been shipped from New York to Rome, Georgia. There was no proof that the defendant ever had or undertook to carry the goods on account of which suit was brought, and the proof was very strong that they never came into the possession of that company or upon its road. The jury found for the defendant. A motion for a new trial was overruled, and this judgment was affirmed.

On behalf of the defendant in error it was urged that the cases, if any, where partial loss could be analogized to damage should be confined to those in which goods were shipped in a car-load lot, or in a single box, bundle or package, or the like, and in which the receipt of the car or of the box, bundle, or package might carry some inference of the receipt of that which was in it when in the hands of the initial carrier; and that the rule has no application in this case, where the bed, washstand, dresser, and other articles were mentioned specifically in the bill of lading, and were not shown to have been fastened together or included in a single car-load, or even forwarded together. It was urged that delivery of some of the articles by the final carrier raised no presumption or inference that it received the other articles which were not delivered; and that, if it never received

them, it was not liable for their loss. The authorities cited above do not make any distinction as to whether or not the shipment was included in a single car or box; nor do they refer to that as a controlling factor in the decisions made. In the Laughlin case, a considerable quantity of cloth was shipped in three separate boxes, though apparently in one shipment. In the case of Gwyn Harper Mfg. Co., it was only stated in the opinion that the action was to recover for the loss of 20 bags of flour forming part of a shipment. If the goods were included in a single car or box, it might add greater force to the presumption and make it more difficult to be overcome, but the non-existence of that fact would not destroy the rule as to property included in one shipment as one lot or aggregate, under one bill of lading. Here the articles of personalty were included in a single shipment; a single bill of lading was issued for them; and their weight in bulk was marked upon it, emphasizing the fact that the shipment was treated as an entirety. The freight charges were apparently upon the whole, not upon separate articles. In pursuance of this shipment the defendant, as the final connecting carrier, undertook to act, and did deal with and handle at least a part of the property which was to be transported. It was shown to have been in touch with the shipment, at least with a part of it, and the shipment was single, though composed of details. Whether the last carrier received only a part of such shipment was peculiarly within its knowledge. It was almost impossible for the shipper to prove just where the loss occurred. The sound reasoning on which the rule above announced rests is sufficient to cover the facts of the case, and to shift to the defendant the burden of showing that it did not receive the other articles which formed part of the shipment, or that it was not responsible for their loss. The rule against founding a presumption of fact on a presumption of fact is not relevant. It is a question of what proof will make a prima facie case against a common carrier. Whether this is done by direct proof alone, or with the aid of a presumption, if a sufficient case of loss by a common carrier is shown—sufficient if not rebutted, the law then declares the liability of the carrier and the defenses open to it.

2. It was contended that the suit was not only for certain household goods, such as a dresser and washstand, but also for

certain articles of wearing apparel, which were claimed to have been packed in those pieces of furniture, but which were not mentioned in the bill of lading; and that this was a fraud which would prevent any recovery. If it should be conceded that certain articles were packed in the dresser and washstand, and that for them no recovery could be had, proof of this fact alone would not authorize the presiding judge, as matter of law, to direct a verdict for the defendant altogether. On this subject see *Charleston & Savannah Ry. Co.* v. *Moore,* 80 *Ga.* 522 (5 S. E. 769).

What has been said shows that the judge erred in directing a verdict, and renders it unnecessary to discuss the question of practice as to the grant of a nonsuit or the direction of a verdict if the plaintiff's evidence failed to make out a prima facie case, or as to the effect of the New York decision introduced in evidence.

*Judgment reversed. All the Justices concur, except*

ATKINSON, J., dissenting. In a suit for a breach of contract the burden is upon the plaintiff to establish both the contract and the breach. If a common carrier undertakes to carry goods over its line, it does so under a contract, express or implied, faithfully to perform the service undertaken. If no express contract is made, the mere fact of receiving goods to be carried will be a circumstance from which a contract will be implied. As will be seen from the cases cited by the majority, it has been held that if the last carrier of a line of connecting carriers delivers goods to the consignee in a damaged condition, the burden of proof will be upon such carrier if it would avoid liability for the injury. So, too, where goods are shipped in bulk, and the car or crate in which they were contained is delivered by the last carrier with some of the goods missing, the burden of proof will be upon such carrier. Such rulings must rest on the theory that the fact that the last carrier was found in possession of the goods in a damaged condition, or that it was found in possession of the car or crate in which the goods in bulk ought to be, was in each instance a circumstance sufficient to show an undertaking by that carrier to carry the particular goods which were damaged or lost, and consequently connect the carrier with the contract of shipment, or at least to show an implied contract by such carrier to transport the goods. But the reasons suggested do not apply to a shipment of the character involved in the present case, where the goods were

not found in possession of the last carrier, and where the goods were not shipped in bulk. The loss of the goods sued for may have occurred before any of them reached the defendant. They were separate articles, and not a part of a common bulk. Proof of mere loss is consistent with a loss either before or after the goods went into the hands of the defendant. So long as this consistency exists, the burden will remain upon the plaintiff in order to charge the defendant. Otherwise the presumption will be that the defendant did its duty by delivering such of the goods as actually came into its custody consigned to the plaintiff. As applied to the facts of this case the argument of inconvenience to the shipper in making proof of loss is not sufficient reason upon which to presume the existence of a contractual relation between the plaintiff and defendant. With respect to the goods sued for, the evidence furnishes no basis for a contract, express or implied, upon the part of the defendant to carry them; and as the plaintiff's case must rest upon the establishment of the liability arising from contract, there was nothing upon which a verdict for the plaintiff could have been founded.