### 6211. CAPITAL CITY OIL COMPANY *v.* CENTRAL OF GEORGIA RAILWAY COMPANY.

1. The presumption that goods delivered to the initial carrier as in good order were received in the same condition by the last of several connecting carriers is not a conclusive presumption, but may be rebutted by proof that the damage to the shipment was due to the inherent character and qualities of the article or goods shipped. Presumptions arising by law are substitutes for evidence, and, in the absence of an appropriate request for instructions, the court is no more required to call

particular attention to specific facts resting upon presumption than to facts established by direct evidence.

2. The charge of the court was a full, clear, and impartial exposition of the law pertinent to the pleadings and the evidence.

.3. The controlling issue of fact raised by the evidence was whether the damage to the plaintiff's goods was caused by the negligence of the carrier or by inherent defects in the shipment, and a verdict in favor of either party would have been authorized. The trial judge having approved the verdict, rendered upon conflicting testimony, the exercise of his discretion will not be disturbed.

DECIDED SEPTEMBER 3, 1915.

Action for damages; from city court of Savannah—Judge Davis Freeman. November 25, 1914.

*Paul E. Seabrook,* for plaintiff.

*Lawton & Cunningham, A. R. Lawton Jr.,* for defendant.

RUSSELL, C. J. The Capital City Oil Company brought its suit in the city court of Savannah against the Central of Georgia Railway Company for damage to two cars of Istroma horse-feed, shipped by it on the 6th and 7th days of August, 1913, respectively, to its order, "notify C. N. Roberds, of Savannah, Ga." The goods were shipped from Baton Rouge, Louisiana, on bills of lading issued by the New Orleans, Texas & Mexico Railroad Company. The foodstuff was alleged to have been received by that road sound and in good condition, and it was alleged that the defendant was the "last carrier receiving 'as in good order' and handling said shipment." On the arrival of the cars in Savannah on the 14th and 16th of August respectively, the contents of both were found, on examination by Roberds, to be in a badly damaged condition, and were refused by Roberds. The plaintiff was immediately notified of this refusal, and on August 30, after having first paid the freight on the cars, the plaintiff took possession thereof, and found, as alleged, that the damage to the foodstuff was caused by water which had gotten into the cars and had caused the feed to heat and burn to such an extent that it was practically worthless. In order to lessen the damage, however, the plaintiff handled the feed and obtained therefor $540.13, which amount, when deducted from $1,238.90, the value of the feed in Savannah in good condition, left $698.77, the amount for which judgment was asked. The defendant denied the plaintiff's allegations as to the cause of the damage to the shipment, and pleaded that the damage, if any, was caused by improperly shipping the feed in such condition that it

was liable to heat, burn, etc., and because the feed was not properly cured when shipped, and was of such a nature and composed of such improperly cured ingredients that the damage was due to its condition when shipped, and to the negligence of the plaintiff in shipping it in bulk, when it should have been shipped in sacks. The main issue raised by the evidence was whether the cars of the defendant were in such condition as to prevent damage to the food-stuff from rain, and whether the damage, if any, was caused by the rain, or whether in fact there was some inherent defect in the feed that would cause it to heat when shipped in bulk, and whether this in fact, instead of the rain, caused the damaged condition.

There was an abundance of testimony, expert and non-expert, both for the plaintiff and for the defendant. The defendant introduced witnesses who testified that the damage could not have been caused by the rain, and that the cars in question (which had been examined by witnesses for both sides with a view to ascertaining the safeness of the cars from rain) would not leak; while the plaintiff had witnesses who testified that the damage was in fact caused by the leaky condition of the cars. It was agreed between the parties that in case the jury found for the plaintiff, the defendant was entitled to a credit of $124.88, which had been pleaded as a set-off and which had arisen out of another transaction, and that, if there was no valid claim against the defendant, the defendant was entitled to a verdict against the plaintiff for this amount. It appeared, from the evidence, that the feed in question is a mixture of alfalfa and various grains, and is sprayed with molasses, and there was testimony to show that such feed would, when packed in bulk, heat and become damaged, and that a shipment in bulk of such feed is considered dangerous on account of fire. The tendency of the feed to overheat and become dangerous, of course, depended upon the condition of the various constituent elements when the feed was mixed, and the amount of moisture contained in such parts. There was evidence in behalf of the plaintiff that shipments similar to the one in question had been made from Baton Rouge to Savannah, and that these shipments, or most of them, had arrived in a safe and sound condition. The jury resolved the question of liability in favor of the railway company, and, in accordance with the agreement between the parties above set out, returned a verdict in favor of the defendant for $124.88; and it is

upon exceptions to the overruling of a motion for a new trial that the case is before this court.

The motion for a new trial was based upon the usual general grounds and upon the following ground: "Because the court erred in omitting to instruct the jury substantially upon the rule of law applicable to a material issue made by the pleadings and sustained by legal evidence for the plaintiff, that the goods which were the subject-matter of the damage alleged in said case were delivered to the initial carrier in good order, and were so receipted for by such carrier, and the same were damaged by leaky cars while en route to their destination; and that the defendant, as last connecting carrier, received the goods from the initial carrier and receipted for the same as 'in good order;' such rule or principle of law under such facts being that the last connecting carrier is concluded by its receipt of the goods as 'in good order,' and shall be responsible to the plaintiff for any damage, open or concealed, done to the goods, and such several connecting carriers shall settle among themselves the question of ultimate liability." We shall deal first with this exception, for, though the learned counsel for the plaintiff in error does not directly and specifically refer to this ground in his brief, the substance of the exception is contained in his argument in support of the assignment that the verdict is contrary to the evidence. It is elementary that a common carrier is bound to use extraordinary diligence, and that, in case of loss, the law is against him and no excuse avails unless it was occasioned by the act of God or the public enemy of the State. Civil Code, § 2712. It is equally well settled that for a carrier to avail himself of the defense that loss or damage was caused by the act of God, he must establish not only that the act of God occasioned the loss, but also that his negligence did not contribute to it. Civil Code, § 2713. *Way* v. *Southern Railway Co.*, 132 *Ga.* 679 (64 S. E. 1066). Injury from inherent qualities is somewhat in the nature of damages resulting from the act of God; and in the more recent development of the rules as to the liability of carriers it has been held that they are not liable for loss or damage due to the intrinsic qualities of the goods carried. *Ohlen* v. *A. & W. P. R. Co.*, 2 *Ga. App.* 328 (58 S. E. 511). See also *Forrester* v. *Georgia Railroad &c. Co.*, 92 *Ga.* 699, 704 (19 S. E. 811); *Susong* v. *Florida Central & Peninsular Railroad Co.*, 115 *Ga.* 361, 363 (41 S. E. 566). When the goods composing

48

a shipment are of such intrinsic character as to be self-destructive or incapable of safe transportation, the presumption that damage which occurred in the course of the transportation was due to the negligence of the carrier is rebutted by showing that the damage was due to the inherent qualities of the shipment. *Way* v. *Southern Railway Co.,* supra. But, as argued by counsel for the plaintiff in error, the burden in such a case would be upon the carrier to prove, by satisfactory evidence, (1) that the shipment had an inherent defect or vice which ultimately caused the loss or damage to it in transit, and (2) that negligence of the defendant railway company or of its agents or employees, or of connecting carriers, did not contribute to such loss or damage. The defendant in the present case specially pleaded that the loss and damage was caused by the inherent character of the shipment and was due to defects and vices in the property of which the shipment consisted. The question was one purely of fact. From a delivery of the shipment in good order the law raises the evidentiary presumption that the subsequent carriers received the shipment in the condition in which it was delivered to the initial carrier. This is a legal substitute for proof that it was in fact so delivered. Naturally, therefore, it must be held to be a rebuttable presumption; for if a witness testified that the last carrier received the shipment in good order, it would be within the power of the carrier to introduce testimony to the contrary. There was no proof in this case that the Central of Georgia Railway Company receipted for the shipment as in good order; and consequently the plaintiff's proof that the defendant received the shipment in good order rests solely upon the evidentiary presumption to which we have referred, and it was within the power of the carrier to rebut this presumption by showing that the damage was caused by the inherent quality of the article. The burden was upon the defendant to show that the damage was due solely to the inherent defects in the shipment. It would not be enough for the carrier to show that the damage was caused partly by the inherent quality of the article; for if it was due only partly to the carrier's negligence, it would be liable. After all it is very plain that the issue made by the petition and the special plea of the defendant was altogether one of fact, and the case was not varied because the evidence in behalf of the plaintiff rested partly upon presumption created by law. It was, therefore, not obligatory

upon the court to call the attention of the jury to this fact in favor of the plaintiff more specifically than to any other fact developed in the testimony. In the absence of a pertinent request, the trial court is not required to direct the attention of the jury to specific facts which may be specially advantageous to one or the other of the parties, if the charge as a whole fairly presents the issues and appropriately instructs the jury in regard to them.

The evidence was strongly in conflict upon the controlling issue to which we have referred. But the preponderance does not necessarily lie with the greater number of witness. The opinions of witnesses, both expert and non-expert, may be given just such weight as the jury sees fit to accord them, and there was testimony of at least one witness that even if the car leaked, the water would not have contributed to the damage, and that in his opinion the damage was due solely to the inherent character of the foodstuff in question. The jury having resolved the issue of credibility in favor of the testimony for the defendant, and the trial judge having approved their finding, this court will not interfere with the exercise of his discretion. *Judgment affirmed.*